SENTRY INSURANCE, a Mutual Company, Plaintiff-Appellant,

v.

Rodney M. DAVIS, Anthony M. Scott, Carolyn Y. Beckham, Anthony Beckham and State Farm Mutual Automobile Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 00–2427. Submitted on briefs April 18, 2001.—Decided July 6, 2001.*

2001 WI App 203

(Also reported in 634 N.W.2d 553.)

501

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James M. Fredericks* and *Patrick S. Nolan* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Sean N. Duffey* and *Daniel J. O'Brien* of *Schulz, Duffey & O'Brien, S.C.*, Milwaukee.

Before Dykman, P.J., Vergeront and Deininger, JJ.

¶ 1. DEININGER, J.    Sentry Insurance Company appeals an order which dismissed its action for a judgment declaring that its policy did not provide liability coverage to its insured, Rodney Davis, for an accident in which his vehicle was involved. The trial court declined to consider a document Sentry produced after discovery and briefing deadlines had expired. Based on the record with the document excluded, the court determined "as a matter of law, that Sentry owes coverage to" Davis. Sentry appeals the subsequent order dismissing its declaratory judgment action and an order denying its motion for reconsideration. Carolyn and Anthony Beckham, who were also involved in the accident, and their insurer, respond.[1] We affirm.

---

[1] State Farm Insurance Company insured the vehicle of Carolyn Beckham, in which Anthony Beckham was a passenger. Counsel for State Farm has filed a response brief on behalf of these three parties, to whom we will refer collectively as "Beckham." Attorneys for Rodney Davis and for Anthony Scott,

## BACKGROUND

¶ 2.   Sentry argued in the trial court that the record, even with the late-produced document excluded, supported a judgment in its favor declaring no coverage for Davis's vehicle on the date of the accident. It does not renew that argument on appeal, and accordingly, we deem it abandoned. Our first task is thus to determine whether the trial court erroneously exercised its discretion in excluding the document. If it did, we would consider de novo whether the record, including the disputed document, supports a declaratory judgment of no coverage, as Sentry maintains. We conclude, however, that the trial court did not err in refusing to consider the document, and that ends our review, inasmuch as Sentry makes no claim in this court that the trial court erred in finding coverage as a matter of law if the disputed document is disregarded.

¶ 3.   Given the issue before us, the events occurring during litigation loom larger than those which spawned it. The accident in question occurred on October 5, 1998. Sentry alleged in its complaint, filed May 12, 1999, that it no longer provided liability coverage for Davis's vehicle on the date of the accident, coverage having been cancelled for nonpayment of premiums some three weeks earlier. The court entered a scheduling order on August 31, 1999, setting the date for completion of "all discovery" by March 15, 2000. The order also established that date as the last date for filing "all dispositive pretrial motions."

¶ 4.   On February 4, 2000, Sentry moved for a declaratory judgment that it "does not have a duty to

who was driving Davis's vehicle, informed us by letter that they "adopt" State Farm's brief and would not otherwise be participating in this appeal.

defend or indemnify Rodney M. Davis relative to a motor vehicle accident that took place on October 5, 1998." The motion was noticed to be heard on March 6, 2000. In support of its motion, Sentry filed two affidavits, the first attaching a certified copy of the insurance policy, and the second from a "representative" of Sentry. The representative averred that Sentry had sent a "cancellation bill" on September 2, 1998, to the address listed on the declaration page of Davis's policy. The bill, a copy of which was attached to the affidavit, was for a "current balance" of $185.68, and provided for a "minimum payment" in the same amount. It also provided a "due date" of September 17, 1998, and the warning "You may be letting important protection cancel."

¶ 5. The Sentry representative further averred that "[e]ither Davis or his mother made a payment of $92.84 on September 14, 1998," and that on September 16th, Sentry sent Davis a letter informing him as follows:

> Thank you for your payment of $92.84, however, it is not enough to avoid the cancellation of your Automobile policy which is effective September 17, 1998.
>
> This payment is being applied to your account to cover the balance due up to the date of cancellation.
>
> We would like to reinstate your policy and keep you as a customer. If an additional payment of $92.84 is mailed to us at the above address within 15 days, your coverage will resume one day after the postmark date on the envelope.

A copy of the September 16th letter was filed as an attachment to the affidavit. The representative further averred that Sentry received a check for $93.00 on October 6, 1998, "to reinstate Mr. Davis' policy," and that Sentry later forwarded Davis a check for $56.22 as

a refunded premium for the "lapse in coverage between September 17, 1998 and October 6, 1998." In a brief accompanying the motion and affidavits, Sentry argued that the "cancellation bill" of September 2nd and its letter of September 16th were sufficient under the language of the policy and Wis. Stat. § 631.36(2) (1999–2000)[2] to effect a cancellation of coverage prior to October 5, 1998.[3]

¶ 6.   Beckham moved on February 25, 2000, for additional time to respond to Sentry's motion, citing the need to depose or obtain information from Davis regarding the coverage dispute.[4] Beckham's counsel

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[3] Wisconsin Stat. § 631.36(2)(a) provides, in relevant part, that an "insurance policy may be canceled by the insurer prior to the expiration of the agreed term . . . for failure to pay a premium when due," but that no cancellation for nonpayment "is effective until at least 10 days after the 1st class mailing or delivery of a written notice to the policyholder." Section 631.36(2)(b). Davis's policy included the following language regarding cancellation:

> We may cancel this policy only for the reasons stated in this condition by notifying *you* in writing of the date cancellation takes effect. This cancellation notice may be delivered to *you* or mailed to *you* at *your* mailing address shown on the declarations. Proof of mailing shall be sufficient proof of notice.
>
> Cancellation for Nonpayment
>
> If *you* haven't paid the premium . . . we may cancel at any time by notifying *you* at least 10 days before the date cancellation takes effect.

[4] Although denominated a "motion for declaratory judgment," Sentry's motion was one for summary judgment granting the relief requested in its complaint. Under Wis. Stat. § 802.08(2), a party opposing a summary judgment motion must file countering affidavits "at least 5 days before the

averred she had been unsuccessful to date in efforts to obtain the information deemed necessary for a response. Sentry opposed Beckham's request, asserting that Davis himself was not opposing Sentry's motion and that Beckham could have compelled Davis to appear for a deposition instead of attempting to obtain an informal statement from him. At the hearing on March 6th, Beckham's counsel explained that information from Davis would be crucial in establishing that partial premium payments before and after the date of the accident served to maintain the policy continuously in effect. Sentry countered that any testimony from Davis would be irrelevant in that Sentry's mailing of a notice of cancellation was all that was required to effect a cancellation of coverage prior to the accident.

¶ 7.    The court, although expressing some skepticism regarding whether testimony from any of the parties would ultimately be relevant, opted to "make sure I have everything that can be argued . . . before I decide the case." It granted a continuance of the motion hearing until May 15, 2000; directed Beckham to file a response "within four weeks of today's date [March 6]"; and provided that other parties might reply within five weeks, and Sentry within six.

¶ 8.    Beckham responded to Sentry's motion on April 3rd with a brief and an affidavit from Davis setting forth his actions and contacts with Sentry's agents during the relevant time period. Beckham's first argument, however, was that Sentry's "cancellation bill" and its letter of September 16th, upon which Sentry relied, were insufficient to effect a cancellation of cov-

time fixed for the hearing." The court may, however, "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had" on behalf of parties opposing the motion. Section 802.08(4).

erage under the policy language. Sentry filed its reply on May 8th, in the form of a brief and a second affidavit from its representative, this one attaching a document different from those which Sentry had previously submitted. The "new" document was a "Notice of Cancellation Effective 09/17/98," which was dated September 2, 1998, and informed Davis as follows:

> CANCELLATION IS NOT FINAL UNTIL 09/17/98 AT 12:01 A.M. YOU CAN KEEP YOUR INSURANCE COVERAGE IN FORCE BY MAILING YOUR PAYMENT TODAY.
>
> Cancellation Reason:   Non-Payment of Premium
>
> Minimum Amount Due:   $185.86
>
> You are hereby notified that your insurance under the policy described above will cease at and from the hour and date stated because of non-payment of premium.
>
> We want to keep you as a customer. To avoid cancellation, please be sure that:
>
> 1. You remit at least the minimum amount due with the top portion of the premium notice in the enclosed envelope.
>
> 2. The envelope is postmarked on or before 09/17/98.
>
> 3. Your check is honored by your financial institution.
>
> IF PAYMENT HAS BEEN MADE, PLEASE DISREGARD.

¶ 9.   Sentry's representative averred that the foregoing Notice of Cancellation had been mailed to Davis at his policy declaration address on September 2, 1998. The affidavit was silent, however, regarding why the document had not been included with the

representative's first affidavit in support of Sentry's motion. Sentry's reply brief stated that, only after it reviewed Beckham's and the other defendants' response briefs, had it realized "that an additional notice, dated September 2, 1998, was sent to Davis." Sentry's attorney apologized to the court and opposing counsel "for not submitting all notices sent to Davis in its original filings in support of its motion for declaratory judgment."

¶ 10. Beckham objected to the court's consideration of Sentry's reply brief and affidavit on the grounds that it was filed three weeks beyond the date set in the court's briefing schedule; that it introduced new information which had not been provided in discovery or filed in support of Sentry's motion; and that Beckham was prejudiced by being unable to investigate and respond to the new document.[5] After hearing argument on the matter, the court concluded as follows:

> When it filed long ago, [Sentry] said . . . it sent a notice. And then the issues were met, the schedule was laid out for everyone to defend their issues, and that included discovery to be done by March 15. Briefing schedules were agreed to. When defendants wished an extension, they asked for it of the Court; and the Court granted it. Everything was filed based on a perception of the facts that really had been initiated by Sentry. And then only after the deadline—and I agree it is not a long time after the deadline, but, nonetheless, after the deadline—without any request or leave of the Court to

---

[5] Beckham's counsel filed an affidavit to the effect that Sentry had not provided the "new" document in its initial (July 29, 1999) and supplemental (December 7, 1999) responses to a request for production of documents, which Beckham had issued on June 30, 1999.

509

extend that deadline, an alleged new fact, which is really a critical fact in the case, is presented. . . . And I find that troubling.

I find, just as Sentry is entitled to hold Mr. Davis to his obligations under the policy, this Court can hold Sentry to its obligations under the Court's scheduling order. And, not to be picky about rules . . . but this is a matter of their notice to all parties as to what is at issue; and I don't think the defendants were given an opportunity to adequately defend against what Sentry is now saying is its case. So I am going to find that, based on the late presentation of this issue outside of the closing of discovery, outside of the extended time for filing briefs and allowing arguments, that the second notice which Sentry wishes to bring into this case will not be considered by this Court and that will not be allowed to be a basis for Sentry to argue its case.

Earlier in its ruling, the court stated that its "observation of what's happened here doesn't impute any bad faith to any of the lawyers sitting before me."

¶ 11. The court went on to conclude that, on the record before it (excluding the new document), Sentry had not established that it had properly cancelled coverage in accordance with the policy's provision requiring ten days' advance notice of cancellation. (See footnote 3.)

¶ 12. Sentry moved for reconsideration, claiming that the court's finding that it had not acted in bad faith precluded the sanction of excluding the newly presented document. In denying the motion, the court noted the distinction in the case law "between the imposition of . . . sanctions in response to a party's contempt and use of those sanctions in order to main-

tain the orderly administration of justice."[6] The court explained that it excluded the document on the latter rationale, and concluded:

> I think in this case to impose on the Court and on the other parties a proceeding in which pleadings were made, motions for summary judgment were brought, an extensive period of time was expended on a case which was believed to be on one set of evidence, and then suddenly to attempt to impose in the proceedings a whole new document which would change the whole procedural balance and the substantive merits of the case long after the time for disclosing such documents had passed, I find that's neither a violation of due process by ruling as I did, nor anything that upon reconsideration I believe I should modify.

Sentry appeals the court's orders dismissing its complaint and denying reconsideration.

## ANALYSIS

¶ 13. WISCONSIN STAT. § 804.12(2)(a) provides that "[i]f a party . . . fails to obey an order to provide . . . discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: . . . 2. An order . . . prohibiting the disobedient party from introducing designated matters in evidence." In addition, WIS. STAT. § 802.10(3) and (7) authorize circuit courts to enter scheduling orders and to impose sanctions under § 804.12 for violations of them. The scheduling order in this case required discovery to be completed by March 15, 2000. The order also provided, in bold type,

---

[6] Quoting the Wisconsin Supreme Court's decision *In the Matter of Disciplinary Proceedings Against Donald C. Haberman*, 128 Wis. 2d 390, 392, 382 N.W.2d 439 (1986).

"FAILURE TO COMPLY WITH THE TERMS OF THIS ORDER SHALL BE CONSIDERED CAUSE FOR IMPOSING SANCTIONS WHICH MAY INCLUDE THE DISMISSAL OF CLAIMS AND DEFENSES. See § 804.12 and 805.03 WIS. STATS."

¶ 14. Sentry does not dispute that it did not provide the "new" document to Beckham in response to Beckham's request for production of documents. *See* WIS. STAT. § 804.09. Neither does it dispute that it first produced the document on May 8, 2000, a date that was not only after the discovery deadline, but also after the time set by the court for Sentry to reply to Beckham's response to its summary judgment motion. Accordingly, the issue in this case is not whether Sentry failed to provide timely discovery, or whether it violated court-ordered deadlines. Sentry concedes as much, and thus tacitly concedes that the court was empowered to impose sanctions for its transgressions. Sentry's argument on appeal is that the court erroneously exercised its discretion in imposing the "severe sanction of holding certain facts established, finding insurance coverage as a matter of law, and dismissing Sentry's complaint."

¶ 15. As a preliminary matter, we take issue with Sentry's characterization of the sanction imposed by the trial court. The court did *not* hold certain facts established, find coverage, and dismiss Sentry's complaint as sanctions for Sentry's late production of the document. The only sanction imposed was that the court excluded the late-produced document from its consideration of Sentry's motion for summary judgment. The court then considered the arguments of counsel regarding the merits of Sentry's motion based on Sentry's original and timely submissions, ruled against Sentry, and entered judgment in favor of the defendants, which it was permitted to do. *See* WIS.

STAT. § 802.08(6) ("If it shall appear to the court that the party against whom a motion for summary judgment is asserted is entitled to a summary judgment, the summary judgment may be awarded to such party even though the party has not moved therefor.").

¶ 16.   Sentry's trial counsel understood at the May 15th hearing that the only sanction at issue was whether the court would consider the "new" document, and he did *not* argue that the document was vital to Sentry's position. To the contrary, he informed the court as follows:

> [SENTRY'S COUNSEL]:   ... First of all, we submit that this Court can proceed forward and entirely ignore the September 2nd notice. If you look at the other notice that was sent to Mr. Davis ... we contend that that in and of itself stands as notice within [applicable statute]. That in and of itself is the notice we can go forward on today.

Later, counsel and the court had the following colloquy:

> THE COURT:   So you are saying, if I were to rule out anything that I deem to be late filing and just go on the original notice, you would be willing to argue and you think you could prevail on that?
>
> [SENTRY'S COUNSEL]:   Well, I think so, under the language of the statute. I would ask that this Court do consider the September 2nd notice. . . .
>
> THE COURT:   But today is the 15th. I think whatever is filed was by the 11th or 12th, so they didn't have a lot of time after your May 10th filing.
>
> [SENTRY'S COUNSEL]:   I would ask the Court to consider that issue and that document as well. But I think that both of them independently can stand on their own.

And, at the hearing on Sentry's motion for reconsideration, counsel again acknowledged that the sanction at issue was exclusion of the document: "It is our position that, if we weren't in bad faith and the document can't be stricken, it ought to be considered."

¶ 17.   We question, therefore, whether we are required to apply the rationale of *Schneller v. St. Mary's Hospital*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991), to the present facts. The supreme court explained in *Schneller* that the effect of imposing one of the lesser sanctions permitted under WIS. STAT. § 804.12 may be the equivalent of outright dismissal of a claim or defense: "When the circuit court denied the Schnellers' motion to amend its scheduling order to name additional experts, it effectively dismissed their case as a sanction for their conduct in failing to comply with the scheduling order." *Id.* at 311. Given Sentry's position in the trial court that the court could proceed to consider the merits of its motion without considering the "new" document, we are somewhat discomforted by its argument in this court that we must review the court's action under the "egregious conduct" standard applicable to more drastic sanctions, such as the dismissal of a claim or defense.

¶ 18.   Nonetheless, we recognize that "a litigant is not forever bound to a losing argument." *State v. Petty*, 201 Wis. 2d 337, 348, 548 N.W.2d 817 (1996) (citation omitted). Sentry's failure to renew on appeal its argument that it had effectively cancelled Davis's coverage, even if the "new" document is not considered, is a tacit concession that it can prevail only if the document is considered. We will also assume, without deciding, that if the "new" document were considered, Sentry would be entitled to a judgment declaring that it provided no liability coverage to Davis on the date of the accident. Accordingly, we will consider whether the trial court

erred in imposing a sanction for Sentry's violations that, in hindsight, appears to have effectively precluded Sentry from prevailing in its action. We conclude the trial court did not err.

¶ 19.   The decision to impose sanctions under WIS. STAT. §§ 802.10(7) and 804.12 lies within the trial court's discretion. *Siker v. Siker*, 225 Wis. 2d 522, 535, 593 N.W.2d 830 (Ct. App. 1999). A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). The question is not whether this court as an original matter would have imposed the sanction; it is whether the circuit court abused its discretion in doing so. *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273, 470 N.W.2d 859 (1991). The court's discretion to impose sanctions is "not dependent on a showing that the opposing party has been actually prejudiced by the delay." *Schneller*, 162 Wis. 2d at 314 (citing *Johnson*). The circuit court's "broad discretion" in the matter of sanctioning parties for violating scheduling orders "is absolutely essential to the court's ability to efficiently and effectively administer its calendar." *Id.* at 310.

¶ 20.   Because we are treating the exclusion of the "new" document as effectively "causing the ultimate dismissal" of a plaintiff's case, *id.* at 308, it cannot be sustained unless (1) Sentry's conduct was "egregious," and (2) Sentry provided no "clear and justifiable excuse" for violating the discovery deadline and briefing schedule. *See Johnson*, 162 Wis. 2d at 276–77. We briefly address the second requirement first because there is no basis in the present record for finding a "clear and

justifiable" excuse for the late production of the document. Although counsel made references in its arguments before the trial court to a "photocopying error" by Sentry personnel, no substantiation is to be found in the affidavits of Sentry's representative or counsel for this assertion.[7] Accordingly, we conclude that Sentry has not established a "clear and justifiable excuse" for its noncompliance.

¶ 21. With respect to whether its conduct was "egregious," Sentry emphasizes that the court found that its counsel had not acted "in bad faith." The implication is that conduct cannot be egregious unless

---

[7] As we have noted, the affidavit of the Sentry representative which accompanied the "new" document was silent regarding the circumstances of the document's discovery and provides no explanation of why it was not provided earlier. At the May 15th hearing, Sentry's counsel told the court "some of these documents were double-sided, and in fact the fifth page on the documentation that we submitted to all parties was actually only copied on one page. That was the notice of the cancellation." In its brief in support of its motion for reconsideration, Sentry asserted that after receiving the responses to its motion for summary judgment, Sentry's counsel "discovered that not all relevant notices were contained in the Sentry claims file" that had been provided to the defendants in discovery, and that "[a]fter several weeks, Sentry's counsel was able to obtain the relevant notice of September 2, 1998 that was sent to Davis." At the reconsideration hearing, Sentry's counsel again asserted that "something that we discovered was not copied and sent to us," and that "[w]e found out that somebody (sic) wasn't copied that should have been. We took the best steps we could to get it as quickly as we could, and we did it." Not only are these mere assertions of counsel, as opposed to testimony or averments, but they are lacking in detail as to who made the error, precisely when it was discovered, and what "best steps" were taken to correct the alleged oversight.

it is undertaken in bad faith. We note, however, that although cases dealing with the present issue sometimes mention "bad faith," it is cited in the alternative. *See, e.g., Johnson,* 162 Wis. 2d at 275 ("Our case law establishes that dismissal is improper . . . unless bad faith *or* egregious conduct can be shown on the part of the noncomplying party." (emphasis added) (citation omitted)); *Schneller,* 162 Wis. 2d at 311 ("[T]he circuit court did not expressly state that the conduct of the Schnellers' initial counsel was egregious *or* in bad faith. . . ." (emphasis added)). We conclude that the terms "egregious" and "bad faith" are not necessarily synonymous, and that a party can be guilty of egregious conduct even if it did not act in "bad faith."[8] Moreover, as Beckham argued in the trial court, just because the court concluded that Sentry's counsel had not acted in bad faith, this does not mean that it could not conclude that the conduct of Sentry itself was egregious.

██

¶ 22.   We may affirm the trial court's sanction if it implicitly found Sentry's conduct in this case to be egregious so long as "the facts provide a reasonable basis on review for the court's conclusion." *Schneller,* 162 Wis. 2d at 311. The court expressly considered the timeline of significant events in the litigation, and we conclude that it provided a reasonable basis for the court to find that Sentry had committed a flagrant (see footnote 8) violation of the court's scheduling orders:

[8] According to the RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed., 1987), "egregious" means "extraordinary in some bad way; glaring, flagrant," while "bad faith" signifies a "lack of honesty and trust." "Flagrant," in turn, means "shockingly noticeable or evident; obvious, glaring." We conclude that a party could commit a flagrant discovery or scheduling order violation without necessarily lacking honesty in so doing.

When it filed long ago [approximately one year], [Sentry] said . . . it sent a notice. And then the issues were met, the schedule was laid out for everyone to defend their issues, and that included discovery to be done by March 15. Briefing schedules were agreed to. When defendants wished an extension, they asked for it of the Court; and the Court granted it. Everything was filed based on a perception of the facts that really had been initiated by Sentry. And then only after the deadline—and I agree it is not a long time after the deadline, but, nonetheless, after the deadline—without any request or leave of the Court to extend that deadline, an alleged new fact, which is really a critical fact in the case, is presented. . . . And I find that troubling.

¶ 23. Furthermore, we observe that Sentry is chargeable with knowledge of what its policy required in the way of notice to its insured in order to cancel coverage for nonpayment of premiums. The entire basis of Sentry's lawsuit, and of its motion for summary judgment, was its claim that it had cancelled Davis's coverage in late September of 1998. Sentry and its counsel thus knew, or should have known, that a document critical to its claim was one giving Davis at least ten days' advance notice of the cancellation for nonpayment in September 1998. The "hole" in its case created by the absence of the September 2nd Notice of Cancellation should therefore have been readily apparent to Sentry's representative or its counsel when assembling and transmitting the claim file during discovery, or at the latest, when preparing Sentry's submission in support of its motion for summary judgment. The "shockingly noticeable or evident" (see footnote 8) nature of the omission, under the circumstances, provides additional support for the trial court's conclusion

that Sentry's late production of the document constituted an egregious violation of its ordered deadlines.

¶ 24. Finally, we note again that we do not decide de novo whether the "new" document should have been excluded from consideration. "A trial court's discretionary determination . . . may encompass a result 'which another judge or another court,' including this one, might not have reached on the present facts." *Siker*, 225 Wis. 2d at 542 (citing *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981)). Sanctions other than exclusion of the document might have been imposed under WIS. STAT. § 804.12. Alternatively, the hearing on Sentry's motion might have been postponed in order to allow the defendants additional time to respond to the newly produced document. Sentry, however, did not argue, at either the initial hearing or on its motion for reconsideration, that the court should continue the motion hearing or impose a different sanction for its tardy production of the document. We are generally very reluctant to find an erroneous exercise of discretion where a party fails to ask a trial court to exercise its discretion in a particular manner. *See State v. Gollon*, 115 Wis. 2d 592, 604, 340 N.W.2d 912 (Ct. App. 1983).

## CONCLUSION

¶ 25. For the reasons discussed above, we conclude the trial court did not erroneously exercise its discretion in declining to consider the "new" document when deciding Sentry's motion for summary judgment. Because Sentry does not argue that the trial court erred in determining that, on the record before it, liability coverage was in effect on the date of the accident, we affirm the orders dismissing Sentry's complaint and denying reconsideration.

*By the Court.*—Orders affirmed.