# COURT OF APPEALS
# DECISION
# DATED AND FILED

## November 5, 2019

Sheila T. Reiff
Clerk of Court of Appeals

# NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1483**

Cir. Ct. No. 2018TP55

## STATE OF WISCONSIN

## IN COURT OF APPEALS
## DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.K., JR., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

C.M.,

      RESPONDENT-APPELLANT.

---

      APPEAL from an order of the circuit court for Milwaukee County: GWENDOLYN G. CONNOLLY, Judge. *Affirmed.*

¶1    BRASH, P.J.[1]   C.M. appeals an order of the trial court terminating her parental rights of M.K., Jr.  C.M. asserts that the court erroneously exercised its discretion in entering a default judgment against her and then denying C.M.'s motion to vacate that default judgment without granting an evidentiary hearing. We affirm.

## BACKGROUND

¶2    C.M. is the biological mother of M.K., Jr., who was born January 18, 2013.[2]   M.K., Jr. has significant physical health issues—cardiomyopathy and reactive airway disease—for which he takes four different medications, two times each day, and has a prescribed inhaler.  He has medical appointments at various clinics every six months due to his condition, and also receives an echocardiogram every six months.  M.K., Jr. also has mental health issues:  he has been diagnosed with an anxiety disorder, and has behavioral issues for which he receives weekly therapy.

¶3    M.K., Jr. was removed from C.M.'s home when he was approximately three years old.  In November 2015, the Division of Milwaukee Child Protective Services (DMCPS) had received a referral about M.K., Jr. missing appointments at Children's Hospital.  C.M.'s reasons for missing those appointments were that she had forgotten or that she did not have transportation. Along with a history of missing appointments, it was also observed by health care

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] M.K., Jr.'s adjudicated father, M.K., Sr., was named in this action as well.  His parental rights were also terminated as a result of these proceedings; however, he is not involved in this appeal.

providers that M.K., Jr. was regularly missing medication doses. C.M. was provided with intensive in-home services to assist with taking M.K., Jr. to appointments, giving him his medications in a timely manner, and getting those prescriptions refilled regularly. Still, C.M. missed appointments—she was often found to be sleeping or otherwise unavailable at scheduled appointment times—and was not consistently providing M.K., Jr. with his medications.

¶4      The in-home services program was for a limited term. Extensions were granted due to continuing concerns about the consistency of M.K., Jr.'s care by C.M. The health care workers involved in M.K., Jr.'s case stressed to C.M. how important it was for M.K., Jr. to receive his medications regularly and attend all of his appointment as scheduled—he may eventually need a heart transplant, and inconsistent care could negatively impact his ability to receive one. Even when Children's Hospital arranged for transportation for M.K., Jr.'s appointments, there were multiple occasions where M.K., Jr. was not at home when the driver arrived.

¶5      As a result, M.K., Jr. was removed from C.M.'s care and put into foster care.[3] A petition for a Child in Need of Protection and Services (CHIPS) was filed in October 2016, with a dispositional order issued in February 2017. The order required that C.M. manage her mental health issues; demonstrate an understanding of the negative impact that domestic violence has on M.K., Jr.;[4] and

---

[3] At the time M.K., Jr. was placed in foster care, M.K., Sr. was incarcerated after being convicted of child neglect regarding M.K., Jr.—he had left M.K., Jr. home alone for an "extended period." M.K., Jr. was initially placed with his aunt; however, after approximately nine months, M.K., Jr. was again taken into custody by DMCPS when the aunt suddenly left Wisconsin, leaving him in the care of her boyfriend, who was unable to care for him.

[4] There was a history of domestic violence between C.M. and M.K., Sr.

meet all of M.K., Jr.'s special needs—including all of his medical needs—on a daily basis. To meet these requirements, DMCPS was to provide C.M. with services such as a psychological evaluation, individual therapy, domestic violence programming, and parental programming. C.M. was also required to have regular visitation with M.K., Jr.

¶6      C.M. failed to meet these requirements. She did not utilize the services of any of the mental health treatment providers, nor did she regularly attend therapy. She also failed to complete parental programming, and did not enroll in domestic violence counseling. She did not consistently visit M.K., Jr.; furthermore her visits remained fully supervised due to concerns such as C.M. not timely providing his medication during the visits, and giving him too much "junk food" which caused him to vomit. She also did not attend all of his medical appointments.

¶7      As a result, a petition for the Termination of Parental Rights (TPR) of C.M. with regard to M.K., Jr. was filed on March 29, 2018. In the petition, the State alleged two grounds for termination: (1) the continuing need of protection or services, pursuant to WIS. STAT. § 48.415(2); and (2) C.M.'s failure to assume parental responsibility, pursuant to § 48.415(6).

¶8      Her initial appearance on this matter was scheduled for April 26, 2018. C.M. did not appear. She told her counsel—who had called her from the courtroom—that she had forgotten and was not coming. The trial court then called C.M., on the record, to confirm that she had received the TPR petition and that she understood that she was required to appear in court. The court then explained the proceedings to her and informed her of the next scheduled court date. Additionally, the court provided C.M. with the telephone number for the public

defender's office, and ordered her to call to obtain representation. The court also warned C.M. that if she failed to appear at the next court date, she could be found to be in default, which would result in her losing the right to contest this matter.

¶9 The next court date was May 21, 2018; again, C.M. did not appear. Instead, she contacted the trial court by phone, stating that she had mistaken the time of the hearing and asked to appear by phone. The court then called the public defender's office and discovered that C.M. had never contacted them. The court noted that while C.M. had the right to proceed *pro se*, she had not indicated that she "had any desire to be *pro se* in the matter" during the prior telephone conversation on April 26, and that "given her inability to come to court on two separate occasions, [the court would] have some concern whether someone who can't get herself to court is capable of representing [herself]." (Italics added.) The court then found C.M. to be in default.

¶10 The final pretrial hearing was on August 7, 2018. C.M. appeared, but without counsel. A request to adjourn the trial date of August 20, 2018, was made by counsel for M.K., Sr., and was granted. Since the trial was already being delayed, the trial court gave C.M. another opportunity to obtain counsel, informing her that her lawyer could then file a motion to vacate the default judgment against her.

¶11 C.M. obtained counsel, who filed a motion to vacate the default judgment against her. A hearing on that motion was set for September 13, 2018; C.M. did not appear, and had not responded to calls from her counsel. As a result of C.M.'s non-appearance without explanation, the trial court denied her motion.

¶12 The new final pretrial hearing was held on October 25, 2018. C.M. appeared with counsel, and renewed her motion for the trial court to vacate the

default judgment against her. The trial court denied the request. It observed that the trial date for the matter was set for November 5, 2018, and that M.K., Sr. was prepared to go to trial; however, C.M. had not yet been deposed, and therefore vacating the default judgment would require the trial date to be adjourned. The court determined that it would not be in the best interests of M.K., Jr. for the trial to be further postponed. However, the court stated that it would reconsider its decision if the trial date was "bumped" for a different reason and had to be rescheduled in any event.

¶13 At the November 5, 2018 trial date, M.K., Sr. entered a no contest plea to the ground of failure to assume parental responsibility. The trial court then heard testimony from M.K., Jr.'s case manager regarding both M.K., Sr. and C.M. The court—noting the default judgment against C.M. and its previous findings with regard to that judgment—found that the State had proven both grounds with regard to C.M.: that M.K., Jr. was in continuing need of protection or services, and that C.M. had failed to assume parental responsibility for M.K., Jr.

¶14 A dispositional hearing was held on March 28, 2019, continuing on May 17, 2019. C.M. appeared with counsel, and fully participated in the proceedings. Ultimately, the trial court concluded that it was in M.K., Jr.'s best interests for C.M.'s parental rights to be terminated. This appeal follows.

## DISCUSSION

¶15 On appeal, C.M. argues that the trial court erroneously exercised its discretion in granting the default judgment against her and in denying her motion to vacate the default. "The decision whether to enter a default judgment is a matter within the sound discretion of the [trial] court." *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶18, 246 Wis. 2d 1, 629 N.W.2d 768. Our review of a trial court's

discretionary decision is deferential, in that we "examine the record to gauge whether the [trial] court reached a reasonable conclusion based on proper legal standards and a logical interpretation of the facts." *State v. Evans*, 2000 WI App 178, ¶7, 238 Wis. 2d 411, 617 N.W.2d 220. In fact, because the trial court's exercise of its discretion is "so essential to [it]s functioning, we generally look for reasons to sustain discretionary decisions." *Schneller v. St. Mary's Hosp. Med. Ctr.*, 155 Wis. 2d 365, 374, 455 N.W.2d 250 (Ct. App. 1990).

¶16 The trial court "has both inherent authority and statutory authority" to impose sanctions on a party who fails to obey a court order. *Id.*, ¶17. Specifically, under WIS. STAT. § 805.03, when a party fails "to obey any order of [the] court," the court "may make such orders in regard to the failure as are just," including orders authorized under WIS. STAT. § 804.12(2)(a). Sec. 805.03. That statute allows for the "rendering [of] a judgment by default against the disobedient party[.]" Sec. 804.12(2)(a)3. However, imposing that sanction requires the court to find that the non-complying party has acted "egregiously or in bad faith." *Dane Cty. DHS v. Mable K.*, 2013 WI 28, ¶69, 346 Wis. 2d 396, 828 N.W.2d 198 (citation omitted).

¶17 Relevant case law states these criteria in the alternative; that is, it must be shown that the non-complying party has displayed conduct that is *either* egregious *or* in bad faith. *Sentry Ins. v. Davis*, 2001 WI App 203, ¶21, 247 Wis. 2d 501, 634 N.W.2d 553. The term "egregious," as it relates to imposing sanctions, has been defined as "extraordinary in some bad way; glaring, flagrant," whereas "bad faith" denotes a "lack of honesty and trust." *Id.*, ¶21 n.8 (citation omitted). With these differing definitions, this court has determined that a party "can be guilty of egregious conduct even if it did not act in 'bad faith.'" *Id.*, ¶21.

7

In fact, we have previously concluded that "a party could commit a flagrant … violation without necessarily lacking honesty in so doing." *Id.*, ¶21 n.8.

¶18    Although the trial court did not use the term "egregious" in its ruling, the record indicates that this was its reasoning.  When C.M. missed her first court appearance, the court called her to confirm that she had received the TPR petition and knew that she was required to appear in court.  The court then ordered her to appear at the next hearing, explaining that she could be found in default if she did not appear.  The court at that time also ordered C.M. to obtain counsel, stating that it preferred that she was represented and that it was "assuming" that she wanted representation because this was "an incredibly important proceeding."

¶19    At her next scheduled court date—almost a month later—C.M. again did not appear, nor had she contacted the public defender's office.  In making its determination to find her in default, the trial court observed that C.M.'s failure to appear that day was "intentional," that she had "intentionally failed to follow two court orders," and that there was "no justifiable excuse for her failure to follow those court orders."  This indicates that the court considered C.M.'s conduct—failing to appear at two consecutive hearings and ignoring the court's directive to contact the public defender's office—to be egregious.[5]  *See id.*, ¶21 n.8; *see also Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶14, 265 Wis. 2d 703, 666 N.W.2d 38 (holding that the trial court need not use the terms "egregious" or

---

[5] C.M. argues in her appellant's brief that the trial court did not comply with WIS. STAT. § 48.23(2)(b)3.  This statute describes the conditions for presuming that a parent in a TPR proceeding has waived his or her right to counsel; those conditions are not applicable here, as C.M. did eventually obtain counsel.  Furthermore, we note that this statute expressly states that the "[f]ailure by a parent 18 years of age or over to appear in person at consecutive hearings as ordered is presumed to be conduct that is *egregious* and without clear and justifiable excuse," which is actually more supportive of the State's argument. *Id.* (emphasis added).

8

"bad faith" to describe conduct upon which a default judgment is based "if there is an implicit finding under the correct standard and if the facts provide a reasonable basis for the court's implicit determination"). Thus, the trial court did not err in entering a default judgment against C.M.

¶20 C.M. also argues that the trial court erred in denying her motion to vacate the default judgment against her without an evidentiary hearing. In her motion to vacate the default judgment, C.M. had based her argument on WIS. STAT. § 48.23(2) which, as noted above, contemplates a parent's right to counsel in a TPR proceeding and is not relevant here. Rather, the proper standard for obtaining relief from a judgment is set forth under WIS. STAT. § 806.07.

¶21 The trial court may grant a party's motion for relief from a judgment for a variety of reasons under WIS. STAT. § 806.07, including excusable neglect. "Excusable neglect is not the same as neglect, carelessness or inattentiveness." *Connor v. Connor*, 2001 WI 49, ¶16, 243 Wis. 2d 279, 627 N.W.2d 182. Rather, it is "that neglect which might have been the act of a reasonably prudent person under the same circumstances." *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982) (citation omitted). The defendant bears the burden of demonstrating excusable neglect. *Connor*, 243 Wis. 2d 279, ¶28. "We will not disturb a [trial] court's decision regarding excusable neglect unless an erroneous exercise of discretion is clearly shown." *Id.*, ¶18.

¶22 On the date that C.M.'s motion was to be heard, she did not appear in court—it was the third time that she had failed to appear for these proceedings. Furthermore, C.M.'s counsel stated that she had tried several times to contact C.M. and had not received any response. The trial court stated that C.M.'s non-appearance made it "very hard for the [c]ourt to ascertain whether or not there is a

basis to vacate the default" and, accordingly, denied the motion. When C.M. appeared at the next hearing and renewed her motion, the court denied it, reasoning that vacating the default judgment at that point would cause the trial to be postponed, which was not in the best interests of M.K., Jr.

¶23   C.M. argues that the trial court did not give her the opportunity to provide evidence in support of her motion to vacate the default judgment. That is incorrect: an opportunity was provided at the hearing on her motion for which she did not appear. Furthermore, C.M.'s counsel was unable to make specific arguments on her behalf because C.M. had not contacted counsel, even after counsel tried numerous times to contact her.

¶24   Additionally, at the next hearing after that motion hearing, C.M.'s counsel offered a reason for her previous non-appearance: that because of poverty she did not have bus fare and was unable to get to court. However, in response to an inquiry by the trial court, M.K., Jr.'s case manager stated that C.M. had previously asked for and received bus tickets for proceedings related to this matter. Thus, C.M. has not demonstrated that her nonappearance was due to excusable neglect. *See id.*, ¶16.

¶25   C.M. argues that "the law generally disfavors default judgments[.]" *See id.*, ¶17. However, in determining whether a default judgment should be vacated, the trial court "should also balance other competing interests of a default judgment, such as promoting prompt adjudication and encouraging quality legal representation." *Id.* That is precisely what the trial court did here—weighed the "competing interest[]" of "prompt adjudication" for M.K., Jr., who the court noted had "a right to have this case move forward and to have some finality here." *See id.* Granting C.M.'s motion at that point would have caused the trial to be

postponed, which the court found "would negatively affect" M.K., Jr. by further delaying a permanent resolution for him.

¶26 This was "a reasonable conclusion based on proper legal standards and a logical interpretation of the facts" by the trial court. *See Evans*, 238 Wis. 2d 411, ¶7. Therefore, denying C.M.'s motion to vacate the default judgment was not an erroneous exercise of the court's discretion. *See id.* Accordingly, we affirm the court's order terminating C.M.'s parental rights of M.K., Jr.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.