**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 28, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP796**

STATE OF WISCONSIN

Cir. Ct. No. 2018TP213

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.S. JR., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

L.C.,

      RESPONDENT-APPELLANT.

      APPEAL from an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed.*

¶1 WHITE, J.[1] L.C. appeals the circuit court's order terminating her parental rights to her child, M.S. Jr., on the petition of the Milwaukee County Department of Human Services. She asks this court to vacate the order and remand for a new trial. She argues that the trial court erroneously exercised its discretion when it struck her contest posture as a sanction and entered an order of default judgment on the grounds of termination of L.C.'s parental rights. We conclude that the default sanction was not an erroneous exercise of discretion because a trial court may default a party as a sanction for egregious conduct and the record supports the trial court's findings. Accordingly, we affirm.

**BACKGROUND**

¶2 On September 10, 2018, the State filed a petition to terminate L.C.'s parental rights to her son, M.S. Jr. The petition alleged that M.S. Jr. remained in continuing need for protection or services (continuing CHIPS) and that L.C. had failed to assume parental responsibility.

¶3 M.S. Jr. was born March 31, 2016, and he lived in the care of his mother, L.C. (and some of the time in care of his father) until the Division of Milwaukee Child Protective Services (DMCPS) removed him in April 2017. He was removed from L.C.'s home because he was diagnosed with failure to thrive at

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

approximately one year of age, when he weighed less at his one-year medical examination than at his six-month medical examination. He was placed with a foster care family in April 2017, where he remained through the pendency of these proceedings. On October 8, 2018, the Honorable Christopher Foley[2] heard the State's initial petition seeking involuntary termination of L.C.'s parental rights to M.S. Jr. The circuit court referenced that L.C. had been hospitalized for mental health issues, but deferred appointing a guardian ad litem (GAL). The circuit court told L.C. "you need to appear for all the hearings. You need to be on time for the hearings. You need to stay in touch with whoever your lawyer turns out to be."

¶4      L.C. appeared without counsel at the return hearing date on November 6, 2018; however, the circuit court sent her to the State Public Defender's Office for appointment of counsel. She appeared with counsel at the third hearing date, December 14, 2018, at which she contested the petition and reserved her right to a jury trial. The circuit court reminded L.C. that "You need to appear for all the hearings, be on time, stay in touch with your lawyers." L.C. appeared in person at a permanency plan review hearing on February 12, 2019.

---

[2] During the rotation of judicial calendars, this case moved from the Honorable Christopher Foley to the Honorable Mark A. Sanders. For ease of reading, Judge Foley will be referred to as the circuit court and Judge Sanders as the trial court.

¶5       After L.C. failed to appear at depositions on February 21, 2019, and March 7, 2019, the State moved for sanctions under WIS. STAT. § 804.12 requesting that the trial court refuse to allow L.C. to contest claims in the grounds phase of the TPR proceedings.  On March 19, 2019, instead of having the final pretrial for the scheduled March 25, 2019 jury trial, the circuit court addressed the State's motion for sanctions.  L.C. appeared with counsel, who explained to the circuit court that she had been unable to contact L.C. since December 14, 2018, and she wondered if L.C was homeless.  Counsel stated that her letters to L.C. have been returned and her phone calls went to a non-working number.  Further, L.C.'s counsel stated that she thought a competency examination was needed based on her concerns about L.C.'s understanding of this process.  L.C. informed the circuit court she would not attend a competency examination.  The circuit court appointed a GAL pursuant to WIS. STAT. § 48.235(1) to short-cut competency concerns.  The circuit court informed L.C. that she must appear for the deposition because if she did not, there was a strong likelihood she would be sanctioned by taking away her right to trial on the grounds phase of this case.

¶6       On July 8, 2019, L.C. appeared in person and with counsel at the final pretrial hearing for the rescheduled jury trial.  However, the circuit court was waylaid to address the State's renewed motion for sanctions for L.C.'s failure to appear for scheduled depositions on May 3, 2019, and May 20, 2019.  L.C.'s counsel argued against sanctions because L.C. consistently attended court and

made an effort to stay on top of this case and the CHIPS case. The circuit court described L.C.'s failure to attend depositions as egregious because it was persistent and impaired the opposing parties' efforts to prepare for trial. However, the circuit court also weighed that L.C. has emotional, psychological and competency issues that were unquestionably impacting her ability to do what she was required to do. The circuit court considered but did not decide whether L.C. was attempting to subvert and delay the TPR process. It also pondered if the opposing parties needed to depose L.C. to proceed on the grounds phase of the TPR. It considered taking the motion under advisement with the thought that if the lack of deposition interfered with the State's ability to make its case, then the circuit court could default L.C. Nevertheless, the circuit court was troubled that L.C. had blown up two trial dates, which pointed toward egregious conduct.

¶7      At the next hearing on July 15, 2019, L.C.'s counsel appeared but informed the circuit court that L.C. was outside the courtroom but was refusing to enter and stated that she would fire counsel if she was forced to enter. The circuit court set a fifth deposition date with the stated expectation that if L.C. did not show up and fully cooperate, then she would not be a trial participant.

¶8      L.C. missed the scheduled deposition on August 1, 2019. The State filed its third motion for sanctions to strike L.C.'s trial posture for missing five deposition dates, and a hearing was scheduled for September 20, 2019. However, on that date, L.C. did not appear and the trial court questioned whether she was

sent notice at the proper address. L.C.'s counsel was at a trial in another county and did not appear. The trial court adjourned the hearing over the objection of M.S. Jr.'s GAL.

¶9 The rescheduled hearing on the State's third motion for default was held on October 7, 2019. L.C.'s counsel and GAL appeared; however, L.C. did not appear and had no contact with her counsel, her GAL, M.S. Jr.'s case manager, or the court. L.C.'s counsel reiterated that she had not had contact with L.C.; the phone numbers were not working, although the mail to her most recent address was not returned. M.S. Jr.'s GAL joined the State's motion for sanctions; both parties argued it was egregious that that L.C. missed five scheduled depositions, two court appearances including that day, and she refused to enter the courtroom on July 15, 2019. M.S. Jr.'s GAL pointed out that L.C. was in contact with the court system to obtain a restraining order against M.S. Jr.'s father, but she had not stayed in touch with her attorney, her GAL, or the court on this case.

¶10 The trial court reviewed the situation on the record:

> Here though, there have been at least five deposition dates that have been missed by [L.C.]. While certainly one oversleeping on one date would not be egregious, or not being able to afford bus fare for another date would not be egregious, those negligent excuses begin to lose their persuasiveness when it gets to three or four or certainly five times. We don't even have an explanation. That's because [L.C.] has not been staying in contact with [her counsel], or [her GAL].
>
> Now it's true that [L.C.] does have some mental health issues that may affect her competence. To address

> that situation, Judge Foley took the very prudent step of appointing [a GAL].…
>
> …I accept that she has challenges. I don't accept that those challenges have resulted in her inability to attend five different deposition dates and her decision not to inform parties of her current address and her decision not to stay in contact with [her counsel]. I think it's absolutely is egregious conduct.
>
> …On many occasions she's been told that [if] she doesn't cooperate with specific deposition dates, that there would be consequence that could involve her being found in default. She still hasn't cooperated. There is no other conclusion that can be reached from these facts that her failure to cooperate is designed only to delay these proceedings.

¶11 The trial court also inferred bad faith from L.C.'s refusal to enter the courtroom on July 15, 2019, with a threat that she would fire her counsel if she was forced to go inside. It found by the cumulative nature of her conduct that missing the most recent deposition was both egregious and in bad faith.

¶12 The trial court then considered its options to sanction L.C. for her conduct. It dismissed monetary fines as inappropriate. It determined that limiting the evidence L.C. could provide at trial would not allow the case to proceed. It found that the only sanction that would "address her conduct and relieve the case of the burdens created by her conduct is to find her in default and strike her jury trial position." Otherwise, the trial court stated L.C. could keep skipping depositions, not come to court or communicate with her lawyer, and cause indefinite delay. The trial court then scheduled hearings for the State to prove the grounds of the allegations against L.C. as well as the dispositional phase of the TPR trial.

¶13 At the November 18, 2019 hearing, L.C. was present with counsel. Although L.C.'s counsel explained to L.C. that she could move the court to reopen the default judgment on grounds, L.C. chose to move forward without a motion to reopen. The trial court encouraged L.C. to attend and participate in the dispositional phase of the trial.

¶14 On December 13, 2019, L.C. with counsel attended the State's prove up of the grounds for TPR and the first part of the dispositional hearing. The State called the family case manager from Children's Wisconsin Community Services who supervised M.S. Jr's care for DMCPS. As proof of the grounds, the State argued that L.C. did not comply with condition two, control of her mental health; condition three, always supervise your child and place your child's need before your own; and condition four, have age appropriate expectations of child. Additionally, the case manager testified that as far as she knew, L.C. was transient and did not have a safe, suitable and stable home. The case manager testified she was unaware of any good reason why L.C. had not complied with the reunification plan.

¶15 The dispositional phase of TPR proceedings began on December 13, 2019; the State called M.S. Jr.'s foster mother, who testified to his placement and her willingness and desire to adopt M.S. Jr., and the case manager who earlier testified to the grounds for TPR. The trial continued on December 23, 2019; L.C.

did not call any witnesses and she chose not to testify after a colloquy with the trial court.

¶16 The State and M.S. Jr.'s GAL each reviewed their cases for termination under the six factors in WIS. STAT. § 48.426(3). L.C. argued against TPR and asked the trial court to take judicial notice of the restraining order against M.S. Jr.'s father barring contact with L.C. Her counsel reminded the trial court that L.C. had valiantly tried to attend the hearings even though she lacked an address, she travelled by bus, and she carried her belongings with her.

¶17 Finally, the trial court reviewed the factors under WIS. STAT. § 48.426(3) and found it in the best interest of M.S. Jr. to terminate the parental rights of L.C. and M.S. Jr.'s father. For the first factor, the trial court found that M.S. Jr. was a generally adoptable child. For the second factor, the trial court found that M.S. Jr. was diagnosed with failure to thrive when he was removed in April 2017, but he was a healthy three year old boy at the time of trial. For the third factor, the trial court found that it would not harm M.S. Jr. to sever the relationship with L.C. because it was not substantial because M.S. Jr. was out of L.C.'s care longer than in her care. For the fourth factor, the trial court acknowledged that M.S. Jr. was too young to understand the concept of adoption, but it inferred he would wish to continue living with his foster parents because in the context of his life, they were his parents. For the fifth factor, the trial court

9

found that seventy-one percent of M.S. Jr.'s life was spent in out-of-home care, and that time was the most recent part of his life.

¶18 The final factor was whether the child would be able to enter a more stable and permanent family relationship through termination. The trial court considered that his current foster placement was fairly stable with some concerns, but, in contrast, the likelihood of placement with L.C. was low, due to her impulse control and unaddressed mental health issues. The trial court considered the results of M.S. Jr.'s prior placement with L.C., which was not good because M.S. Jr. was diagnosed with failure to thrive. After reviewing all of the factors, the trial court determined it was in M.S. Jr.'s best interests to terminate the parental rights of L.C. and his father.

¶19 L.C. filed notice of her intent to pursue appellate relief on January 14, 2020. On January 27, 2020, the trial court signed the order appointing appellate counsel. This appeal follows.

## DISCUSSION

¶20 The issue before this court is narrow. L.C. moves the court to vacate the judgment terminating her parental rights to her son, M.S. Jr., because the trial court issued an order of default judgment on the grounds for the TPR as a sanction for L.C.'s conduct in discovery. L.C. argues that the trial court erroneously exercised its discretion to issue this sanction because although a trial court may

issue default as a sanction for conduct that was egregious and without clear and justifiable excuse, here, the trial court failed to analyze whether L.C. had a clear and justifiable excuse for her conduct. We interpret L.C.'s second argument that the trial court did not analyze relevant facts to assert that the circuit court disregarded a clear and justifiable excuse for her conduct.

¶21 We affirm the court because the record supports that L.C.'s conduct was egregious, in bad faith, and no clear and justifiable excuse for her conduct appears in our review of the record.

¶22 It is within the circuit court's discretion to impose sanctions and to decide which sanctions to impose, including striking contest posture and entering default judgment in TPR proceedings. *See **Industrial Roofing Servs., Inc. v. Marquardt***, 2007 WI 19, ¶41, 299 Wis. 2d 81, 726 N.W.2d 898. We review the circuit court's decision to impose a sanction of default judgment under the erroneous exercise of discretion standard. ***Brandon Apparel Grp., Inc. v. Pearson Props., Ltd.***, 2001 WI App 205, ¶10, 247 Wis. 2d 521, 634 N.W.2d 544. "A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach." ***Dane Cty. DHS v. Mabel K.***, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶23     The circuit court has inherent and statutory authority to sanction a party for failing to obey a court order. *See* WIS. STAT. §§ 804.12(2)(a) and 805.03. Statutory sanctions for failing to obey a court order are limited to those that are "just." *Industrial Roofing*, 299 Wis. 2d 81, ¶43. A party may be sanctioned with dismissal, striking contest posture, or default judgment when the party's conduct is egregious or in bad faith without clear and justifiable excuse. *See id.* For a circuit court to enter default judgment, it is not required to analyze a "specific set of factors" but instead it focuses on the degree to which the party's conduct impairs justice in this action and justice in the operation of our judicial system. *Brandon Apparel*, 247 Wis. 2d 521, ¶11 (internal citations omitted).

¶24     L.C. argues that the trial court's failure to use the terms "clear and justifiable excuse" shows that the trial court did not analyze the second step of the sanction analysis. We do not require the circuit court to use magic words. *See Marathon County v. D.K.*, 2020 WI 8, ¶54, 390 Wis. 2d 50, 937 N.W.2d 901. We will not "reverse simply because the court did not use these words if there is an implicit finding under the correct standard and if the facts provide a reasonable basis for the court's implicit determination." *Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶14, 265 Wis. 2d 703, 666 N.W.2d 38. Therefore, we must examine whether the trial court imposed the default sanction in accordance with the law and upon a reasonable determination of the facts in the record.

¶25 When we review a claim that the court did not consider a clear and justifiable excuse for sanctioned conduct, we search the record for a basis for this allegation. *See Sentry Ins. v. Davis*, 2001 WI App 203, ¶20, 247 Wis. 2d 501, 634 N.W.2d 553. Although L.C.'s mental health condition was referenced throughout the proceedings, the record does not support that L.C. made her mental health an excuse for her conduct that delayed the TPR proceedings. The record supports that the court recognized and responded to L.C.'s mental health challenges; the circuit court appointed a GAL without ordering a competency examination in order to safeguard L.C.'s rights and participation.

¶26 The court was not hasty to sanction L.C. A court may not impose default judgment as a sanction unless the non-compliant party was on notice of that possibility. *See* WIS. STAT. § 805.03; *East Winds Props., LLC v. Jahnke*, 2009 WI App 125, ¶14, 320 Wis. 2d 797, 772 N.W.2d 738. The State moved the court three times to sanction L.C. for failing to attend depositions because without having L.C.'s responses, the State's ability to prepare for trial was impaired. The March and July hearings on sanctions resulted in the TPR trial dates being pushed back. The circuit court put L.C. on notice that failing to cooperate with court orders to attend depositions and stay in touch with her counsel would result in striking her contest posture and entering default judgment. When the trial court addressed the State's third motion after L.C. missed the fifth deposition date, it

reviewed L.C.'s total conduct in the case and concluded that the cumulative effect was both egregious and in bad faith.

¶27 We examined the record but are unpersuaded that the trial court failed to consider a clear and justifiable excuse for L.C.'s conduct. Wisconsin courts have not interpreted the meaning of "a clear and justifiable excuse" as a legal term, but instead at its plain and ordinary meaning. We have rejected claims of a clear and justifiable excuse when an examination of the record fails to support the claim. *See, e.g.* **Trispel v. Haefer**, 89 Wis. 2d 725, 734, 279 N.W.2d 242, 246 (1979) (no clear and justifiable excuse for failure to comply with a court order for discovery when there is no information in the record or by affidavit to support the claim); **Brandon Apparel**, 247 Wis. 2d 521, ¶16, (no clear and justifiable excuse when a party's claims it need not attend a deposition were made without a basis in law or fact); **Sentry Ins.**, 247 Wis. 2d 501, ¶ 20 (no clear and justifiable excuse when there was no substantiation in the record to support arguments made before the trial court for a discovery production error.)

¶28 Here, our examination of the record does not show that the trial court failed to consider a clear and justifiable excuse or even failed to look for one. When the trial court reviewed L.C.'s failures to follow court orders to attend depositions and stay in contact with her attorney at the October hearing, it stated, "We don't even have an explanation." At the November 2019 hearing for the State to prove the grounds for TPR, L.C. through counsel decided not to move to

reopen the default judgment. That would have been an opportune moment to make the court aware of a justifiable excuse for L.C.'s conduct and allow it to reconsider its decision.

¶29 L.C. argues that the trial court failed to consider certain relevant facts. She argues that the trial court failed to consider the severity of her mental health challenges, especially because the trial court entered default judgment without seeing L.C. in person in court. Additionally, she argues that the trial court failed to consider her active engagement in the TPR case. And finally, she argues that the trial court did not consider alternatives to default judgment, such as a trial without deposition testimony or a lesser sanction.

¶30 L.C. argues that the trial court failed to consider the severity of her mental health problems, which could excuse her failure to follow court orders. She asserts that because the trial court had not seen L.C. in person, it did not understand the impact of L.C.'s challenges on her conduct. L.C. acknowledges that the court recognized her mental condition and challenges, but not the severity of it. Here, L.C. references her stay at Winnebago mental hospital in 2017 as an indication of the severity of her problems; however, her hospital stay was discussed at the first sanctions hearing in March 2019. L.C. told the court she had been found competent and would refuse a new competency examination. The circuit court appointed the GAL to ameliorate concerns about L.C.'s competence. The trial court did not benefit from seeing L.C. in court because she missed

hearings in September and October 2019. It is unreasonable to hold L.C.'s absence against the trial court in light of the thorough record it made of L.C.'s conduct that warranted sanction. We cannot conclude that L.C. offered a clear and justifiable excuse for her conduct that the trial court ignored or minimized.

¶31 L.C. argues that it was erroneous to enter default judgment against her because she was active and engaged in the TPR case. The State disagrees that L.C. was active and engaged. We cannot help but note that L.C.'s failure to attend depositions resulted in additional court hearings that she did attend; therefore, her attendance in court cannot be dispositive to determining her active participation or any trial court error to impose sanctions.

¶32 Finally, L.C. argues that the trial court could have moved forward with the trial without deposition testimony or could have imposed a lesser sanction. Both positions ask us to interfere with the court's management of its trial practice and its administration of justice. "The general control of the judicial business before it is essential to the court if it is to function." *Trispel*, 89 Wis. 2d at 733. "The circuit courts have a duty to discourage the protraction of litigation, preserve judicial integrity, and promote the orderly processing of cases." *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 281-82, 470 N.W.2d 859 (1991), *overruled by* *Industrial Roofing*, 299 Wis. 2d 81. At the second motion hearing for sanctions, the circuit court pondered whether the trial could proceed without deposition testimony. But it did not issue a new discovery order or order the State

16

to proceed with interrogatories or other method of obtaining the information it sought in deposition. Even if it had issued an order, that non-final order would not bind the successor court. Whether the State could have proceeded without deposition is not at issue; rather, we consider whether the court acted reasonably in administering justice.

¶33     We are persuaded that the court balanced the fair consideration of the claims against L.C. and the desire for a permanency plan for M.S. Jr. It did not rush the case, but it did not allow it to linger. "A continuing failure to sanction may be perceived by the noncomplying party and other litigants as a green light to flaunt court orders." *Id.* Our review of the record shows the court giving L.C. many chances to contest the TPR—including three hearings for L.C. to appear with counsel and three trial dates before the court heard testimony on the facts of the TPR. As for argument that the trial court could have imposed a lesser sanction, we find it reasonable that the trial court considered default to be the only sanction that would allow the case to move forward. Any lesser sanction, such as barring evidence to support her claims, would have still allowed L.C. to delay the trial by not appearing and not cooperating.

¶34     We conclude that the trial court did not erroneously exercise its discretion to impose default judgment as a sanction. The trial court then went on to fulfill its duties to hear the State's proof of the TPR charges, it maintained L.C.'s appointment of counsel, and it encouraged L.C.'s participation in the

dispositional phase of the TPR.  For the foregoing reasons, we affirm the trial court.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)(4).