BRANDON APPAREL GROUP, INC., Plaintiff-Counterclaim-Defendant,

v.

PEARSON PROPERTIES, LTD., Clyde Pearson, and Helenann Pearson, Defendants-Counterclaim-Plaintiffs,

Clyde PEARSON, Third-Party Plaintiff-Respondent,

v.

Eric LEFKOFSKY, Third-Party Defendant-Appellant.†

Court of Appeals

*No. 00–2532. Submitted on briefs April 18, 2001.—Decided July 12, 2001.*

2001 WI App 205

(Also reported in 634 N.W.2d 544.)

† Petition to review denied 10-23-01.

521

On behalf of the third-party defendant-appellant, the cause was submitted on the briefs of *G. Michael Halfenger, Anne Berleman Kearney* and *Jessica E. Price* of *Foley & Lardner* of Milwaukee and *Donald K.S. Petersen* and *Steven R. Lefkofsky* of *Petersen & Lefkofsky* of Bloomfield Hills, Michigan.

On behalf of the third-party plaintiff-respondent, the cause was submitted on the brief of *Donald K. Schott* and *Valerie Bailey-Rihn* of *Quarles & Brady LLP* of Madison.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. ROGGENSACK, J. Eric Lefkofsky appeals the circuit court's decision to grant default judgment in favor of Clyde Pearson because Lefkofsky engaged in bad-faith discovery practices, including failing to appear for a court-ordered deposition four weeks before a

scheduled trial. He argues that the circuit court erred by (1) finding that his conduct was in bad faith and without a clear and justifiable excuse; (2) awarding default judgment to Pearson; and (3) failing to conduct a separate hearing to determine the amount of damages. We conclude that: (1) the circuit court's findings that Lefkofsky's conduct was in bad faith and without a clear and justifiable excuse are not clearly erroneous; (2) Lefkofsky's conduct hampered the ability of the court to promote the orderly processing of the case, which provided a sound basis for the circuit court to exercise its discretion by granting default judgment; and (3) Lefkofsky did not request a hearing or attempt to submit proof to contest the amount of the judgment, thereby waiving any argument that judgment for a lesser amount should have been entered. Accordingly, we affirm the judgment of the circuit court.

## BACKGROUND

¶ 2. Lefkofsky and Bradley Keywell purchased Clyde and Helenann Pearson's apparel manufacturing business in 1994. The purchase included more than 100 pieces of machinery used to manufacture apparel. In connection with the purchase, Brandon Apparel Group, Inc., the operating business entity of the purchasers, executed a $1 million subordinated debenture to be held by and payable to Pearson Properties, Ltd., a new entity owned by the Pearsons. The subordinated debenture required Brandon Apparel to make monthly interest payments to Pearson Properties, with the $1 million principal due in August 2004. Lefkofsky and Clyde Pearson also drew up a handwritten side agreement that provided the following:

> This is an understanding among two parties—Eric Lefkofsky and Cap [Clyde] Pearson. Eric is one of the

people buying Cap's business, Brandon, Inc. Under the terms of the sale of Brandon, Cap and his wife, Helenann, will be owed $1,000,000 under a long term debenture. This debenture has no collateral backing it up. Eric and Cap have reached a side agreement among Gentlemen. Eric will personally guarantee one half the money Cap is owed ($500,000) with both his handshake and his signature. If the new company refuses to pay Cap the money he is owed, without just and valid reason, Cap may enforce this letter to collect from Eric. Cap has told Eric that he is buying a good, solid company. If this is true, which Eric believes it is, Eric feels he should stand behind the money Cap is owed just as Cap is willing to stand behind the Company he is selling Eric. It was with this understanding that the above was so agreed.

Both Lefkofsky and Pearson signed the side agreement.

¶ 3. In May 1996, Brandon Apparel filed a fourteen-count complaint against the Pearsons and Pearson Properties, alleging that much of the machinery included in the purchase was defective. Brandon Apparel also notified the Pearsons that it planned to stop paying interest on the subordinated debenture because it had a right to unilaterally offset its damages. The circuit court ordered Brandon Apparel to continue making the full payment, with $6,000 per month going to Pearson Properties and the balance to an escrow account. By September 1999, only a single claim for breach of warranty remained. Brandon Apparel was four months behind on its monthly payments due under the subordinated debenture, and it again notified the Pearsons that it was stopping the monthly payments.

¶ 4. Pearson Properties counterclaimed against Brandon Apparel based on its failure to make the payments required by the subordinated debenture. Clyde Pearson also filed a third-party claim against

Lefkofsky in his individual capacity, alleging a right to payment under the side agreement because Brandon Apparel had refused to pay according to the terms of the subordinated debenture. Lefkofsky asserted that he was not liable under the side agreement because Brandon Apparel had, in the words of the side agreement, "just and valid reason" for nonpayment and the company he had purchased was not "good" or "solid."

¶ 5. Lefkofsky and Brandon Apparel repeatedly stonewalled the Pearsons' attempts to obtain discovery regarding the alleged defects in the equipment that were central to both Brandon Apparel's claim and its defense to liability on Pearson's third-party claim. Their May 24, 2000 responses to interrogatories illustrate the problem.

> **Interrogatory No. 2**: Please identify in detail all appraisals in your possession compiled from 1994 until today's date, on any equipment and/or machinery that was purchased by Brandon Apparel from the Pearsons. . . .

> **Response No. 2**: Brandon will produce, at a mutually agreeable date and time, non-privileged, relevant documents that remain in its possession and that it is able to locate.[1]

> **Interrogatory No. 3**: Please state the current locations of the equipment and/or machinery purchased by Brandon Apparel from the Pearsons pursuant to the Asset Purchase Agreement.

> **Response No. 3**: Brandon objects to this interrogatory as being overbroad, burdensome, and harass-

---

[1] The Pearsons' attorney immediately responded by requesting copies for which he said they would pay, but by the July 10th hearing on Pearson's motion for default judgment, nothing had been produced.

ing. All of the equipment purchased by Brandon under the Asset Purchase Agreement is not at issue in this case. With respect only to the equipment at issue in this case, any equipment that has not been sold or otherwise disposed of is either at Brandon's facility in Chicago, at its warehouse in Wisconsin, or in the bank's control or possession.[2]

**Interrogatory No. 4**: Please state whether Brandon Apparel currently has possession of any equipment and/or machinery purchased from the Pearsons pursuant to the Asset Purchase Agreement, and if so, list all equipment in Brandon Apparel's possession by description and serial number.

**Response No. 4**: Brandon objects to this interrogatory as being overbroad, burdensome, and harassing. All of the equipment purchased by Brandon under the Asset Purchase Agreement is not at issue in this case. With respect only to the equipment at issue in this case, Brandon relies on its responses to the defendants' previous interrogatories (asking that this equipment be identified) and in the Affidavit of John Kovacs, previously submitted to the Defendants.

Therefore, although trial was scheduled for July 24, 2000, Pearson Properties was unable in late May to ascertain the location of the equipment, its condition, or even what equipment was alleged to be defective.

---

[2] A June 2, 2000 letter from Brandon Apparel's counsel revised the response to this interrogatory as follows:

> . . . I am now advised that the majority, if not all, of the equipment at issue is located at Brandon's Georgia facility. The address is 1113 South Main Street, Sylvania, GA. Of course, we still see absolutely no relevance to this Interrogatory, as the location of this equipment is not at issue and has no bearing on this case.

¶ 6. On May 30, 2000, the Pearsons served various discovery requests on Brandon Apparel, including notices of deposition for Lefkofsky and Keywell. Both had been previously deposed in 1996. Brandon Apparel moved for a protective order to halt the depositions, arguing that redeposing the pair was unnecessary.

¶ 7. At a June 12, 2000 pretrial conference, the circuit court considered Pearson's third-party claim and held as a matter of law that Brandon Apparel's insolvency was not a "just and valid reason" to excuse Lefkofsky from liability under the side agreement. The circuit court also ordered Lefkofsky and Keywell to appear for depositions at the offices of Pearson Properties' counsel in Milwaukee on June 27, 2000.

¶ 8. Late in the afternoon of June 26, Brandon Apparel's counsel (who also represented Lefkofsky) faxed a letter to the court and Pearson's counsel. The letter stated, in part:

> I am . . . advising you that Brandon Apparel Group is financially unable to proceed any further with the prosecution of its claims for breach of warranty in this case, and is unable to financially defend against Pearson Properties' claim for breach of the Subordinated Debenture. . . .
>
> Based on Brandon's inability to continue to finance this litigation, I assume your clients will seek entry of an Order dismissing Brandon's claims, and providing for a Judgment on behalf of Pearson Properties on the Counterclaim against Brandon. Brandon will not be responding to any outstanding discovery, as it no longer is pursuing any claims, and as it no longer is defending against any claims—thus, discovery relating to Brandon is no longer applicable. Similarly, the depositions of Brad Keywell and Eric Lefkofsky will not be going forward in Wisconsin tomorrow. These individuals were

noticed as representatives of Brandon, and on the theory that because Brandon is a plaintiff pursuing claims in Wisconsin, they can be deposed in Wisconsin. On this basis, Judge Miller agreed. Of course, this scenario is no longer true. If you would like to set up a time to depose Eric Lefkofsky as a third-party defendant, please let me know and we can set up a convenient time in Chicago to do so.

¶ 9. Lefkofsky and Keywell did not appear for the scheduled depositions. Pearson moved for default judgment on his third-party claim against Lefkofsky as a sanction for failing to appear for his deposition as ordered. On July 10, 2000, the circuit court granted the motion for default judgment and ordered default damages of $500,000 plus costs and interest, the full amount specified in the side agreement.[3] Lefkofsky did not request a hearing or present affidavits on the issue of damages. He appeals the circuit court's judgment.

## DISCUSSION

### Standard of Review.

¶ 10. We examine the circuit court's decision to grant a default judgment under the erroneous exercise of discretion standard. *Kerans v. Manion Outdoors Co.,* 167 Wis. 2d 122, 130, 482 N.W.2d 110, 113 (Ct. App. 1992). When we review a discretionary determination, we examine the record to determine if the circuit court logically interpreted the facts, applied the proper legal standard, and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach.

---

[3] The circuit court also entered judgment on the counterclaim for Pearson Properties against Brandon Apparel in the amount of $1 million. Brandon Apparel does not appeal the judgment against it.

*State v. Keith*, 216 Wis. 2d 61, 69, 573 N.W.2d 888, 892–93 (Ct. App. 1997). We will affirm the circuit court's factual findings unless they are clearly erroneous. WIS. STAT. § 805.17(2) (1999–2000);[4] *Hur v. Holler*, 206 Wis. 2d 335, 342, 557 N.W.2d 429, 432 (Ct. App. 1996).

**Default Judgment.**

¶ 11. Default judgment terminates litigation without regard to the merits of the claim; therefore, a circuit court should impose it as a sanction only when a harsh sanction is necessary. *Hudson Diesel, Inc. v. Kenall*, 194 Wis. 2d 531, 542, 535 N.W.2d 65, 69 (Ct. App. 1995). WISCONSIN STAT. § 804.12 authorizes the circuit court to grant default judgment for various discovery violations, including a party's failure to attend his or her own deposition. To grant default judgment, the circuit court must find that the non-complying party's conduct is without a clear and justifiable excuse and conclude that the noncompliance was either egregious or in bad faith. *Smith v. Golde*, 224 Wis. 2d 518, 526, 592 N.W.2d 287, 291 (Ct. App. 1999) (*citing Hudson Diesel*, 194 Wis. 2d at 542, 535 N.W.2d at 69). Under § 804.12(2)(a)3., a circuit court may enter a default judgment as a sanction for bad-faith discovery violations when the offending party has not proved it had a clear and justifiable excuse for its conduct. *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 275, 470 N.W.2d 859, 864 (1991). The circuit court may conclude a party operated in bad faith where the party has "intentionally or deliberately delayed, obstructed or

---

[4] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

refused the requesting party's discovery demand."[5] *Hudson Diesel*, 194 Wis. 2d at 543, 535 N.W.2d at 69. A circuit court is not required to analyze a specific set of factors before awarding a default judgment; instead, it should focus on "the degree to which the party's conduct offends the standards of trial practice." *Johnson*, 162 Wis. 2d at 286, 470 N.W.2d at 869. For example, we have sustained a circuit court's finding of bad faith based on a "spirit of noncooperation," *Midwest Developers v. Goma Corp.*, 121 Wis. 2d 632, 650, 360 N.W.2d 554, 563 (Ct. App. 1984), and on "a pattern of last-minute offerings of inadequate material and failure to respond to the plaintiff's attempts at communication." *Kerans*, 167 Wis. 2d at 131, 482 N.W.2d at 113. A circuit court may find that a party acted in bad faith as long as it is clear from the record that the court was convinced of

---

[5] There may be some ambiguity in our previous decisions on the appropriate standard. *Hudson Diesel* states that a circuit court may sanction a party for abuse of discovery based on conduct that is either egregious or in bad faith. *Hudson Diesel, Inc. v. Kenall*, 194 Wis. 2d 531, 543, 535 N.W.2d 65, 69 (Ct. App. 1995). Egregious conduct is conduct that, although unintentional, is "extreme, substantial, and persistent." *Id.* at 543, 535 N.W.2d at 69–70. However, we held in a later decision that a trial court should dismiss a cause of action under WIS. STAT. § 804.12(4) only in the case of "egregious conduct," although our decision did not explicitly define "egregious conduct." *Geneva Nat'l Cmty. Ass'n, Inc. v. Friedman*, 228 Wis. 2d 572, 580, 598 N.W.2d 600, 604 (Ct. App. 1999). Both decisions cite *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 470 N.W.2d 859 (1991) for this proposition. We read *Johnson* to allow dismissal based either on bad faith or on egregious conduct. *See id.* at 275, 470 N.W.2d at 864; *see also Sentry Ins. v. Davis*, 2001 WI App 203, ¶ 21, 247 Wis. 2d 501, 634 N.W.2d 553 (noting distinction between bad faith and egregious conduct).

the party's bad faith, even though the court did not use the words "bad faith." *Englewood Cmty. Apartments Ltd. P'ship v. Alexander Grant & Co.*, 119 Wis. 2d 34, 40 n.3, 349 N.W.2d 716, 719 n.3 (Ct. App. 1984) (holding that the circuit court implicitly found bad faith when it characterized a party's conduct as a "pattern of abuse," "dilatory," and "reflective of a cavalier approach").

¶ 12. Underlying the court's power to grant a default judgment for discovery violations is the need for the circuit court to control the administration of the cases which come before it.

> The court's authority to dismiss actions emanates not merely from a need to prevent injustice to the parties in the particular action, but also from a need to prevent injustice to the operation of the judicial system as a whole. The circuit courts have a duty to discourage the protraction of litigation, preserve judicial integrity, and promote the orderly processing of cases. Dismissal, in some instances, is necessary to maintain these interests. Each time the court's orders are disregarded, the administration of justice suffers because the court's time is misused to accommodate the noncomplying party's dilatoriness at the expense of the other party and all other litigants awaiting the court's attention.

*Johnson*, 162 Wis. 2d at 281–82, 470 N.W.2d at 867 (citation omitted).

### 1. Bad Faith/Clear and Justifiable Excuse.

¶ 13. To determine whether the circuit court erroneously exercised its discretion in granting default judgment for $500,000 to Pearson on his third-party claim, we first examine its underlying factual findings. The circuit court's findings that Pearson proved Lefkofsky's conduct was in bad faith and that Lefkofsky

did not prove a clear and justifiable excuse for the failed discovery must be sustained if they are not clearly erroneous. *Johnson*, 162 Wis. 2d at 275, 470 N.W.2d at 864; *Hur*, 206 Wis. 2d at 342, 557 N.W.2d at 432.

¶ 14. The record demonstrates a clear and continuing pattern of intentional, deliberate discovery violations by Lefkofsky and Brandon Apparel. They culminated in Lefkofsky's refusal, in direct violation of the court's order, to attend his June 27 deposition, and they are sufficient to support a finding of bad faith. Without disputing any of the alleged discovery violations, Lefkofsky argues only that the circuit court never found that he acted in bad faith. He correctly observes that the circuit court never used the words "bad faith" in granting the default judgment motion. However, we conclude that its comments constitute an implicit finding that Lefkofsky acted in bad faith. *Englewood Cmty. Apartments*, 119 Wis. 2d at 40 n.3, 349 N.W.2d at 719 n.3.

¶ 15. As in *Englewood*, the circuit court's bad faith finding was obvious. For example, at the July 10 hearing, the court chided Lefkofsky for lack of candor with the court, rebuked his counsel for refusing to identify issues for a trial scheduled to begin in two weeks, including why Lefkofsky believed he did not have to pay the $500,000 addressed in the side agreement, and found that Lefkofsky's abusive discovery practices had made it extremely difficult for the other parties to present their case. The circuit court's implicit finding of bad faith is not clearly erroneous.

¶ 16. Lefkofsky concedes that he did not attend the deposition, but he contends that he had a clear and justifiable excuse because he was noticed only in his capacity as an officer of Brandon Apparel, which had voluntarily withdrawn its last claim the previous after-

noon. In support of this argument, he offers the notice of deposition, the abbreviated caption of which does not include him as a third-party defendant, and various carefully chosen excerpts from the notice of deposition and the hearing transcript. However, at the July 10 hearing on Pearson's motion for default judgment, the circuit court stated that it had not limited Lefkofsky's deposition to only those issues that could be inquired into in his capacity as an officer and director of Brandon Apparel. The circuit court said,

> ... I can guarantee we never talked about what capacity they were being deposed. I was looking at whatever issues are out there. ... [Additionally], any defenses he's going to raise, are the same. If he raises any defense with regard to the equipment and its defective condition, it will be exactly the same information we'd have been getting in this trial as it relates to the original claim of Brandon Apparel.

And further, the notice of deposition did not state that Lefkofsky was to appear only in his official capacity as an officer and director of Brandon Apparel,[6] nor does any statement of the court or counsel at the June 12 pretrial conference support Lefkofsky's interpretation of the court's order. The circuit court also expressly referred to Pearson's third-party claim in ordering Lefkofsky to attend the deposition, without objection from Lefkofsky.

---

[6] Lefkofsky cites no law to support his contention that he was not required to appear at the deposition because he did not appear on the notice's abbreviated caption as a third-party defendant, and we can find none. We are not required to consider undeveloped arguments, and we decline to do so here. *Truttschel v. Martin*, 208 Wis. 2d 361, 369, 560 N.W.2d 315, 319 (Ct. App. 1997).

¶ 17. Furthermore, Brandon Apparel was still a party to the lawsuit on June 27, when the deposition was scheduled to occur. Once a responsive pleading is filed, a plaintiff may dismiss a case only by order of the court. WIS. STAT. § 805.04(2). By a faxed letter, Brandon Apparel informed the court and other parties that it was dropping its claim late in the afternoon of June 26, but that letter did not dismiss the action Brandon Apparel had commenced and to which the Pearsons had made responsive pleadings, including a counterclaim. Therefore, Lefkofsky's argument that he was not required to attend the deposition has absolutely no basis in law or in fact and provides no clear and justifiable excuse for his refusal to appear. Accordingly, we conclude that the circuit court's findings that Lefkofsky acted without a clear and justifiable excuse, as well as in bad faith, are not clearly erroneous.

### 2. Default Judgment.

¶ 18. We now address whether the circuit court erroneously exercised its discretion in granting a default judgment to Pearson. Lefkofsky's conduct throughout this litigation ran counter to what the discovery statutes require. His failure to appear at the June 27 deposition was the culmination of several years of abusive discovery practice. At the June 12 pretrial conference, the circuit court ordered that he be deposed in preparation for a trial scheduled to take place in only six weeks. At the pretrial, Lefkofsky and Brandon Apparel asserted they were prepared to litigate based on the allegedly defective condition of more than 100 pieces of equipment. Although they had previously deposed Lefkofsky and Keywell and submitted numerous interrogatories and requests for admission, the Pearsons had been unable to inspect the equipment, determine its condition, or even learn which particular

pieces of equipment were allegedly defective. The circuit court ordered the depositions in an attempt to narrow the issues for trial, and Lefkofsky's intentional refusal to comply with the court's order severely hampered the court's ability to promote the orderly processing of the case, as the circuit court explained:

> No matter how I look at it Brandon and Mr. Eric Lefkofsky, . . . have made it extremely difficult for the [third-party] plaintiffs to proceed with first their defense and now their claims on the third-party complaint. They have made it very difficult for this court to orderly bring this matter forward for completion before a jury.

■■■■

¶ 19. Lefkofsky also argues that the circuit court erred because it never considered a lesser sanction. However, the court was not required to examine whether a lesser sanction would be sufficient because Lefkofsky's conduct was intentional. *Hudson Diesel,* 194 Wis. 2d at 545, 535 N.W.2d at 70. Based on the record before us and the court's patient administration of the case prior to granting default judgment, we conclude that the circuit court did not erroneously exercise its discretion in granting the default judgment.

### *3. Damages.*

■■■■

¶ 20. Lefkofsky contends that the circuit court was required to receive additional evidence to assess damages. The default judgment statute provides, "If proof of any fact is necessary for the court to give judgment, the court shall receive the proof." Wis. Stat. § 806.02(2). This proof may be presented through an evidentiary hearing or by means of affidavits. *Midwest Developers,* 121 Wis. 2d at 651, 360 N.W.2d at 564. However, no further evidence regarding damages is

required if the defendant was previously notified of the amount claimed as damages and never questioned or contested it.[7] *Id.* at 652, 360 N.W.2d at 564 (*citing United States v. DeFrantz,* 708 F.2d 310, 312 (7ᵗʰ Cir. 1983)). Furthermore, a responding party who fails to move for a hearing on damages or present other proof disputing the movant's damages figure is considered to have waived the argument on appeal. *Kerans,* 167 Wis. 2d at 132, 482 N.W.2d at 113. This is particularly appropriate in cases where the circuit court has awarded default judgment as a sanction for bad-faith discovery violations, as remanding the case for consideration of damages presents more opportunities for delay and obstruction. *Id.* at 132, 482 N.W.2d at 114.

¶ 21. Lefkofsky does not contest that Pearson's third-party complaint notified him that Pearson was claiming $500,000 in damages under the terms of the side agreement or that $500,000 was requested as a sanction. Furthermore, the record shows that Lefkofsky did not request a hearing to present proof disputing the $500,000 damage figure, nor did he attempt to submit affidavits or any other type of proof to contest the amount claimed. By failing to proceed on any of these options before the circuit court, we conclude he has waived this argument for appeal. *Kerans,* 167 Wis. 2d at 132, 482 N.W.2d at 113.

¶ 22. Lefkofsky also argues that the circuit court erroneously exercised its discretion by prohibiting him from submitting evidence to demonstrate that he was not liable under the terms of the side agreement. Specifically, he claims that the circuit court prohibited

---

[7] Contesting the amount claimed means more than simply denying liability in the answer to a third-party claim. *Kerans v. Manion Outdoors Co.,* 167 Wis. 2d 122, 132, 482 N.W.2d 110, 113 (Ct. App. 1992).

him from submitting evidence of (1) the defective nature of the equipment, which he argues is relevant to whether the company was "good" and "solid" at the time of sale, and (2) Brandon Apparel's inability to pay, which he contends is relevant to whether the company had a "just and valid reason" for failing to make the payments required by the subordinated debenture.

¶ 23. However, the court awarded default judgment to Pearson based on its conclusion that Lefkofsky had, in bad faith and without a justifiable excuse, deliberately refused to provide discovery. Thereafter, the defenses he now attempts to raise were foreclosed; liability was established. The only subject on which proof may have been received was the amount which remained unpaid on the side agreement. Lefkofsky put in no proof contesting that $500,000 remained unpaid. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion when it set the damages according to the amount alleged to be due under the side agreement, $500,000.

## CONCLUSION

¶ 24. We conclude that: (1) the circuit court's findings that Lefkofsky's conduct was in bad faith and without a clear and justifiable excuse are not clearly erroneous; (2) Lefkofsky's conduct hampered the ability of the court to promote the orderly processing of the case, which provided a sound basis for the circuit court to exercise its discretion by granting default judgment; and (3) Lefkofsky did not request a hearing or attempt to submit proof to contest the amount of the judgment, thereby waiving any argument that judgment for a lesser amount should have been entered. Accordingly, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.