COURT OF APPEALS
DECISION
DATED AND FILED

**November 19, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal Nos.** **2019AP1623** | **Cir. Ct. Nos. 2018TP106** |
| **2019AP1624** | **2018TP107** |
| **2019AP1625** | **2018TP108** |
| **2019AP1626** | **2018TP109** |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |
| | **DISTRICT I** |

IN RE THE TERMINATION OF PARENTAL RIGHTS TO S.J., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

   PETITIONER,

 V.

Z. J.,

   RESPONDENT.

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K.J. JR., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

   PETITIONER,

 V.

Z. J.,

   RESPONDENT.

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO S.J., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

   **PETITIONER,**

 **V.**

**Z. J.,**

   **RESPONDENT.**

---

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO S.J., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

   **PETITIONER,**

 **V.**

**Z. J.,**

   **RESPONDENT.**

---

   APPEALS from orders of the circuit court for Milwaukee County: M. JOSEPH DONALD, Judge. *Affirmed.*

   ¶1  DUGAN, J.[1] Z.J. appeals the orders terminating her parental rights to her four biological children. The only issue on appeal is Z.J.'s argument that

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

the trial court erroneously exercised its discretion when it entered default judgment against her during the grounds phase of the petitions to terminate her parental rights to her children.[2] We disagree and, therefore, affirm the trial court's orders.

## BACKGROUND

¶2      Z.J. is the mother of four children. S.J. is an eight-year-old girl who was born on February 12, 2011; K.J. Jr. is a seven-year-old boy who was born on February 29, 2012; S.J. is a five-year-old girl who was born on February 4, 2014; and S.J. is a three-year-old girl who was born on February 27, 2016.

¶3      The three eldest children were initially removed from Z.J.'s care in July 2015 due to ongoing concerns of domestic violence in the home directed at her by K.J. Sr., and drug abuse.[3] They were returned to Z.J.'s care in July 2016, after she participated in inpatient drug treatment. Then, in March 2017, the four children were removed from Z.J.'s care because she was abusing drugs and alcohol, and leaving her children with unsafe caregivers. From March 2017 until

---

[2] Judge Christopher R. Foley initially presided over the case. Beginning on July 23, 2018, Judge M. Joseph Donald presided over the case. The case was transferred to Judge Donald after Z.J. filed a request for substitution of judges on July 9, 2018.

Separate cases were filed for each child and Z.J. filed a separate notice of appeal in each case. On September 23, 2019, we issued an order consolidating the appeals.

Although the cases were separate before the trial court, in most instances the parties' papers and court orders in each case were identical, and joint court proceedings were held for the four cases. For ease of reading, we refer to documents that were filed in the singular, even though actually a particular document was filed in each case.

[3] The fourth child had not been born yet.

3

February 2018, Z.J. did not participate in any alcohol or drug abuse treatment programs, any domestic violence or mental health services, or any visitation. Then, in February 2018, she reengaged in services until July or August 2018.

¶4      On May 25, 2018, the State filed a petition to terminate Z.J.'s parental rights to each of her children on the grounds of children in continuing need of protective services (CHIPS), and failure to assume parental responsibility.[4] In support of the grounds for termination, the petition alleges that Z.J. failed to meet court ordered conditions for the return of her children, including that she control her drug and alcohol abuse, of which she had an extensive history, and understand how her drug and alcohol abuse affected her children; control her mental health, which included a long history of mental health diagnoses including bipolar and borderline personality disorders; provide safe care for her children; and visit her children regularly.

¶5      On June 13, 2018, Z.J., together with counsel,[5] and J.T.N. appeared before the trial court for a plea hearing.  The hearing was adjourned so that counsel could be appointed to represent J.T.N., who appeared without counsel. However, before adjourning the hearing, the trial court advised Z.J. as follows:

---

[4]  The petition also sought to terminate the parental rights of K.J. Sr., the father of Z.J.'s three older children, and J.T.N., the father of Z.J.'s youngest child, to their children.  We have only included facts relating to the fathers if necessary for clarity.  Any issues relating to either father are not part of this appeal.  Since the petition refers to the father of Z.J.'s youngest child as J.T.N., we use those initials.  We note, however, that the hearing transcripts only include his given name and surname.

[5]  The attorney, who appeared with Z.J., also advised the trial court that a second attorney would also be representing Z.J.  Counsel did not provide any explanation for the involvement of a second attorney.

4

> [Y]ou need to appear for all subsequently[]scheduled hearings. You need to be on time for those hearings. You need to maintain reasonable communication with [counsel], in your case, [Z.J.]
>
> ….
>
> You're going to get asked later in this process to participate in a deposition. If you get properly noticed of a deposition, you have to appear and participate in that process in good faith.
>
> If you didn't do those things, emphasizing in particular appearing for hearings, you could be defaulted, lose your right to fight against this, because you didn't come to court or do the other things that need to be done.

¶6 On July 9, 2018, Z.J. appeared before the trial court, with counsel, for a hearing. However, prior to the start of the hearing, Z.J. filed a request for substitution of the judge and the hearing was rescheduled. Before adjourning the matter, the trial court addressed Z.J. stating, "I'll advise all the parents you need to reappear for the next hearing, all subsequently scheduled hearings, maintain contact with your lawyers, cooperate with the discovery process. If you didn't do that you could be defaulted or lose your right to fight against the termination of your parental rights."

¶7 On July 23, 2018, Z.J. appeared, with counsel, at the rescheduled plea hearing before the newly substituted trial court. Z.J. denied the allegations of the petition and reserved her right to a jury trial.

¶8 On August 16, 2018, Z.J. appeared before the trial court with counsel. The trial court scheduled a September 27, 2018 hearing on Z.J.'s motion for unsupervised visitation.

¶9      Z.J.'s counsel appeared at the September 27, 2018 hearing, but Z.J. did not appear.  Z.J.'s counsel informed the trial court that she did not know where Z.J. was that day and she withdrew Z.J.'s motion for unsupervised visitation.  The State then asked the trial court to take under advisement a request for entry of default against Z.J., based on her failure to appear at the hearing and stated that, if Z.J. did not appear for her deposition, it would file a motion for default.  The trial court agreed to take the default request as to Z.J. under advisement.  The trial court then heard testimony on J.T.N.'s motion for a change of placement.  The hearing on J.T.N.'s motion was not completed that afternoon, so the hearing was adjourned until November 14, 2018.

¶10     On November 14, 2018, Z.J.'s counsel was present for the hearing— Z.J. was not.  The trial court asked Z.J.'s counsel to explain Z.J.'s absence.  Z.J.'s counsel responded that Z.J. believed housing was an important part of her case and that, in order to obtain housing, she had to attend a housing inspection scheduled during a four-hour window that morning.

¶11     The State then asked the trial court to hold that Z.J. was in default, subject to prove-up.  The State cited Z.J.'s failure to appear for her November 7, 2018 deposition, without any explanation; an outstanding warrant for Z.J.'s arrest, issued because she had absconded from probation; Z.J.'s failure to attend visitation with her children since August 2018; and Z.J.'s failure to stay in contact with the Division of Milwaukee Child Protective Services as required.  The guardian *ad litem* agreed that default should be entered.

¶12     Counsel for Z.J. asked the trial court to take the default request under advisement, arguing that Z.J. was absent that day because the timing of the

6

hearing and the housing inspection coincided and Z.J. felt that housing was "one of the more important things" because she needed housing for anything else to move forward in the case.

¶13 The trial court stated that housing was important, but that did not explain the missed deposition, and that Z.J. also needed to clear up the warrant. The trial court then stated that it would take the motion for default under advisement until the next hearing and that, if Z.J. did not appear at that time, it would then rule on the motion for default with respect to the grounds phase of the proceeding.[6] The trial court then heard testimony on J.T.N.'s motion and set a December 21, 2018 date to hear the parties' arguments on J.T.N.'s motion, to render its decision on the motion, and to address the State's motion for default as to Z.J.

¶14 On December 4, 2018, the State filed a motion for default judgment based on Z.J.'s failure to appear for her deposition. In an affidavit, the assistant district attorney averred that Z.J. had failed to appear for her deposition that was originally scheduled for November 7, 2018, and then rescheduled for November 29, 2018, without providing any reasons for her absence. The assistant district attorney also averred that Z.J. had failed to appear for court proceedings on September 27, 2018 and November 14, 2018, although the trial court had ordered

---

[6] Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights. *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. In the grounds phase, the petitioner must prove by clear and convincing evidence that at least one of the twelve grounds enumerated in WIS. STAT. § 48.415 exists. *See* WIS. STAT. § 48.31(1); *Steven V.*, 271 Wis. 2d 1, ¶¶24-25. In the dispositional phase, the trial court must decide if it is in the child's best interest that the parent's rights be permanently extinguished. *See* WIS. STAT. § 48.426(2); *Steven V.*, 271 Wis. 2d 1, ¶27.

7

her to appear and warned that Z.J. that any failure to appear could result in a default finding.

¶15 At the next proceeding before the trial court on December 21, 2018, Z.J. did not appear, although her counsel were present. The trial court asked about Z.J.'s whereabouts, and counsel stated that Z.J. was not in custody. The State then renewed its request for entry of default against Z.J., stated it had filed a motion for default after Z.J. had failed to appear for her deposition on November 28, 2018, and asked that Z.J.'s counsel be removed.

¶16 Counsel for Z.J. stated that Z.J. had been in touch with them at times, but that she was not in court because she was afraid she would then be arrested on the outstanding probation warrant and lose the housing that she had just secured. Counsel for Z.J. asked the trial court to allow them to continue representing her and that no formal order of default be entered.

¶17 The trial court asked the guardian *ad litem* for her position on the default request. The guardian *ad litem* responded that she agreed that default should be entered. The trial court then found Z.J.'s "nonappearance to be egregious, and … persistent" and, therefore, the trial court held Z.J. "in default with respect to phase one." The trial court also held that it would allow Z.J.'s counsel to remain on the case, at least until the dispositional phase. The trial court suggested that Z.J.'s counsel try to get Z.J. to appear, stating that it was "extremely important" for it to hear what she had to say. The trial court scheduled the matter for a combined prove-up as to the ground phase and a hearing on the dispositional phase of the petition to terminate Z.J.'s parental rights.

¶18 On February 9, 2019, the trial court presided over the combined prove-up and dispositional phase hearing. Z.J. did not appear and her counsel, who were present, had no information to provide to the trial court about where she was.

¶19 The trial court heard testimony from a family case manager, who worked on the case from March 2016 through December 2018, regarding Z.J.'s failure to participate in any drug treatment program since August 2018, her failure to control her mental health by engaging in required mental health services, her failure to provide safe care for her children, and her failure to visit her children. The trial court then found that, for the grounds phase, the State had established by clear and convincing evidence both Z.J.'s failure to assume parental responsibility and that the children were in continuing need of protection and services. It then found that Z.J. was unfit to parent her four children.

¶20 The hearing then shifted to the dispositional phase of the termination of parental rights case. The trial court heard additional testimony from the former and current family case managers, and one member of each of the two foster families with whom the children were living. The trial court then heard the parties' arguments regarding the termination of Z.J.'s parental rights and asked the guardian *ad litem* to state her position. The guardian *ad litem* recommended that Z.J.'s parental rights as to all four children be terminated.

¶21 The trial court then rendered an oral decision terminating Z.J's parental rights to the four children. It explained its findings, which included a finding that all the testimony relating to the statutory factors to be considered in deciding whether to terminate a parent's rights to a child was credible, and

9

addressed the required statutory factors and its consideration of the guardian *ad litem*'s recommendation. The trial court entered orders terminating Z.J.'s parental rights on February 20, 2019.

¶22 This appeal follows.

¶23 We refer to additional relevant facts in our discussion.

## DISCUSSION

¶24 As noted, Z.J.'s only argument on appeal is that the trial court erroneously exercised its discretion when it entered default judgment against her during the grounds phase of the petitions to terminate her parental rights to her children.

### I. Standard of review and applicable law

¶25 The decision whether to enter a default judgment rests with the sound discretion of the trial court. *See Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶18, 246 Wis. 2d 1, 629 N.W.2d 768. When reviewing a discretionary determination, "we examine the record to determine if the circuit court logically interpreted the facts, applied the proper legal standard, and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach." *See Brandon Apparel Grp., Inc. v. Pearson Props., Ltd.*, 2001 WI App 205, ¶10, 247 Wis. 2d 521, 634 N.W.2d 544. We will uphold the trial court's factual findings unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2).

¶26 A trial court has "both inherent authority and statutory authority under WIS. STAT. §§ 802.10(7), 804.12(2)(a), and 805.03 to sanction" a party "for

10

failing to obey court orders," which includes entering default judgment against that party. ***Evelyn C.R.***, 246 Wis. 2d 1, ¶17 (footnotes omitted). "To grant default judgment, the circuit court must find that the non-complying party's conduct is without a clear and justifiable excuse and conclude that the noncompliance was either egregious or in bad faith." ***Brandon Apparel Grp., Inc.***, 247 Wis. 2d 521, ¶11. "A circuit court is not required to analyze a specific set of factors before awarding a default judgment; instead, it should focus on 'the degree to which the party's conduct offends the standards of trial practice.'" *See id.* (citation omitted).

## II. The trial court properly exercised its discretion when it granted default judgment against Z.J. on the grounds phase of the termination of parental rights proceeding

¶27 In arguing that the trial court erroneously exercised its discretion in defaulting her on the grounds phase of the termination of parental rights case, Z.J. first argues "[a]lthough Judge Foley told Z.J. during the first two hearings in front of him that she had to appear at subsequent hearings and cooperate with the discovery process, Judge Foley was not the judge who presided over [the] cases … after the substitution request was approved." She then asserts that, after a substitution request is timely filed, the judge named in the substitution request has no further jurisdiction.

¶28 Z.J. then states that Judge Donald was assigned to her cases after the substitution requests were filed. She then asserts that Judge Donald never orally or in writing ordered Z.J. to make all court appearances personally or comply with discovery requests. Z.J. asserts that

> because [she] was not under an order from Judge Donald—
> the court that presided and had jurisdiction over her
> cases—to appear personally at all scheduled hearings or
> comply with discovery requests, it was erroneous for the

11

[trial] court to determine that she disobeyed the court's orders, her conduct was egregious, and default her.

¶29 Z.J.'s argument is undeveloped. She does not provide any reasoning for her bald assertion that the judicial officer who enters a default judgment against a party must be the same judicial officer who ordered that party to appear at all judicial proceedings and cooperate with discovery or face being held to have defaulted. Moreover, she cites no legal authority for the proposition. "Arguments unsupported by references to legal authority will not be considered." *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶30 As previously stated, not once but twice, Z.J. was ordered to appear for court proceedings and to comply with discovery requests, and told that, if she did not do so, she could "lose [her] right to fight against the termination of [her] parental rights."[7] She was clearly ordered to comply with those requirements and that, if she did not do so, she could face default judgment. We are not persuaded by Z.J.s' first argument.

¶31 Z.J.'s second argument is that her personal appearance at the September 27, November 14, and December 21, 2018 hearings was unnecessary

---

[7] As noted earlier, Judge Foley advised Z.J., at both the June 13, 2018 plea hearing and the July 9, 2018 hearing where Z.J. filed the substitution request, that she had to appear at all scheduled hearings and comply with discovery requests or she could be subject to default—lose her right to fight against the termination of her parental rights. Z.J. appears to argue that Judge Foley lost jurisdiction of the cases after the substitution request was filed. Assuming without deciding whether Judge Foley lost jurisdiction to issue the order after the substitution request was filed, Z.J. does not argue and, therefore, concedes that he had jurisdiction to issue the order at the June 13, 2018 hearing. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (declining to develop or to consider party's undeveloped arguments).

because the hearings were all scheduled for J.T.N.'s change of placement motion. We disagree.

¶32    We begin with the court's orders. On June 13, 2018, the trial court stated that "you need to appear for *all* subsequently[ ]scheduled hearings." (Emphasis added.) Then, on July 9, 2018, the trial court stated, "I'll advise all the parents you need to reappear for the next hearing, *all* subsequently scheduled hearings[.]" (Emphasis added.) The trial court's order did not include any exceptions to the order that Z.J. appear at any and all subsequently scheduled hearings. In addition, the September 27, 2018 hearing was scheduled to address Z.J.'s motion for a change in visitation. The motion was only withdrawn at the hearing on September 27, 2018, when Z.J. failed to appear. Z.J.'s appearance was also never waived at any hearing where she failed to appear.

¶33    Furthermore, the trial court's decision to enter default judgment as to the grounds phase against Z.J. was not based solely on her failure to make court appearances, the trial court also relied upon Z.J.'s failure to appear for her depositions. The trial court stated as follows:

> Given her nonappearance—this is the—and I've tried many times to give her an opportunity to appear in court. Given her failure to respond to the scheduled depositions, given her failure to appear in court, given the fact that this is the second court appearance where the State has made the request for default finding, I find her nonappearance to be egregious, and it has been persistent, and given that, the [c]ourt at this time will find [Z.J.] in default with respect to phase one.

¶34    Z.J.'s third argument is that her fear of losing housing, which was one of the conditions for the return of her children, and her fear of being arrested

were a justifiable excuse for her failure to appear at the November 14 and December 21, 2018 hearings.

¶35 Z.J.'s counsel presented the general contours of that argument on December 21, 2018, in opposition to the State's request for entry of default arguing as follows:

> [S]he was taken into custody on an outstanding child support warrant for Marathon County where the intention was they were going to remove—or move her up there because she was behind on child support for kids that I believe are already 18 or close to 18.
>
> So when that happened, her probation officer put an automatic hold on her at the House of Correction. So she was sitting and was never brought to Marathon County and it took two and-a-half weeks for her probation officer to lift that hold.
>
> In that time she lost her spot at Sojourner. She was living in their temporary housing. She lost—I mean, everything stopped. It totally threw her off track and she struggled mightily to get back on track since then.
>
> She does have—I believe she does still have a warrant through her probation officer. And she's desperately afraid if she goes into custody that she'll lose the housing that she was finally able to secure.
>
> ….
>
> But if it is because she doesn't want to be taken into custody, and this awful cycle starts again and she loses the housing she's been trying for years[,] years to get,…. And so I would ask that we be allowed to stay on and she not be defaulted.

¶36 The trial court stated that it was "not unsympathetic to the plight of marginalized and poor individuals in our system." However, the trial court also recognized that it had to "balance not only what [was] fair for [Z.J.,] but also what [was] fair for the children." The trial court then found Z.J. in default relying on

her "egregious" and "persistent" nonappearance and her failure to respond to depositions. Thus, the trial court rejected the contention that Z.J.'s concerns regarding housing and being taken into custody on the probation arrest warrant were a justifiable excuse for her not appearing at scheduled court proceedings.

¶37 Furthermore, even after finding Z.J. in default, the trial court left the door open for her to appear at the combined prove-up on the grounds phase and the dispositional phase hearing on February 9, 2019. The trial court stated,

> However, what I will do, [Z.J's trial counsel], is allow you to remain on the case until we—until—at least until the disposition phase or phase two of the case. If you are able to reach out and get her to appear, I—it's extremely important for the [c]ourt to hear her voice. But, you know at this point in time, the [c]ourt will default [Z.J.] as relates to the grounds phase[.]

¶38 However, Z.J. did not appear at the combined ground phase prove-up and dispositional phase hearing on February 9, 2019. When the trial court asked trial counsel about Z.J.'s whereabouts, trial counsel stated that she did not have any information that she could provide. The State advised the trial court that Z.J. was not in custody and that she remained in absconder status from her probation agent. The trial court responded, "All right, then the [c]ourt previously has found [Z.J.] in default as relates to the filing of the TPR [termination of parental rights], and I will continue that default finding with respect to the dispositional phase."

¶39 Based on the foregoing, we conclude that the record establishes that, when entering default against Z.J. during the grounds phase, the trial court "logically interpreted the facts, applied the proper legal standard, and used a demonstrated, rational process to reach a conclusion that a reasonable judge could

reach." *See **Brandon Apparel Grp., Inc.***, 247 Wis. 2d 521, ¶10. Therefore, we affirm.

## CONCLUSION

¶40 We conclude that the trial court properly exercised its discretion when it entered default judgment against Z.J. during the grounds phase of the petitions to terminate her parental rights to her children, and reaffirmed its holding when she failed to appear at the combined grounds phase prove-up and dispositional phase hearing. Therefore, we affirm the trial court's orders.

*By the Court.*—Orders affirmed.

This opinion will not be published. WIS. STAT. RULE 809.23(1)(b)(4).

16