COURT OF APPEALS
DECISION
DATED AND FILED

February 17, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2025AP2731**
**2025AP2732**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2024TP83
2024TP84

**IN COURT OF APPEALS
DISTRICT I**

---

APPEAL NO. 2025AP2731

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K.A.Z., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

L.Z.,

      RESPONDENT-APPELLANT.

---

**APPEAL NO. 2025AP2732**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO K.M.Z., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

       **PETITIONER-RESPONDENT,**

  **V.**

**L.Z.,**

       **RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Milwaukee County: LAURA GRAMLING PEREZ, Judge. *Affirmed*.

¶1 DONALD, J.[1] L.Z. appeals the orders terminating her parental rights to her children, Kayla and Kendall.[2] L.Z. argues that the circuit court inadequately considered whether severance of the parent-child relationships would be harmful to the children when it determined that termination was in the children's best interests. For the following reasons, we affirm.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] We refer to the family in this matter by initials or pseudonyms to maintain confidentiality and privacy, in accordance with WIS. STAT. RULE 809.19(1)(g).

¶2      The State filed petitions to terminate L.Z.'s parental rights to Kayla and Kendall in 2024.  As grounds for termination, the petitions alleged that L.Z. had failed to assume parental responsibility for Kayla and Kendall, and Kayla and Kendall were in continuing need of protection and services (continuing CHIPS). At a hearing in January 2025, L.Z. entered no-contest pleas to the ground of failure to assume parental responsibility for both children.

¶3      At disposition, C.M.—the foster parent for Kayla and Kendall— testified that both Kayla and Kendall had been living with her for approximately four years and that she was willing to adopt both children if the court terminated L.Z.'s parental rights.  C.M. stated that she does "not adopt as a parent.  I adopt as a surrogate grandmother.  They have parents.  They have a mother.  They have a father and they are going to have a role in their lives."  C.M. also stated that she "definitely want[s] to make sure that they stay in contact with their parents forever.  It's a must."

¶4      In making its decision, the circuit court found that the children had a "substantial relationship" with L.Z. and that severing the relationship between L.Z. and her daughters would be harmful, but that it believed, on balance, it would not be harmful.  Explaining its reasoning, the court stated that "there is always harm in ending a relationship between parents who really love their children and children who really love their parents, at least ending the legal relationship," but the court also noted that it was harmful for the children to not have some sort of resolution.

¶5      The circuit court also stated, "I have to consider very strongly [C.M.'s] commitment to maintaining a relationship" between the children and their parents.  The court acknowledged that, if L.Z.'s parental rights were terminated, C.M. would have no "legal obligation" to continue any relationship

between L.Z. and the children. The court stated that it usually discounted such promises, but concluded nonetheless that it would not be "harmful to the children to sever those legal relationships between them and their biological parents because I believe to a significant degree their relationship with their biological parents will continue as much as it has continued for the past several years[.]" Ultimately, the court found that it was in the best interests of the children that L.Z.'s parental rights be terminated.

¶6 On appeal, L.Z. argues that the circuit court erroneously exercised its discretion when it inadequately considered whether severance of the relationship between L.Z. and the children would be harmful. A circuit court must exercise its discretion in deciding whether to terminate parental rights. *Rock Cnty. DSS v. K.K.*, 162 Wis. 2d 431, 441, 469 N.W.2d 881 (Ct. App. 1991). In reviewing a discretionary determination, "we examine the record to determine if the circuit court logically interpreted the facts, applied the proper legal standard, and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach." *Brandon Apparel Grp., Inc. v. Pearson Props, Ltd.*, 2001 WI App 205, ¶10, 247 Wis. 2d 521, 634 N.W.2d 544.

¶7 A circuit court, in deciding to terminate a parent's rights, must make its findings on the record, explain the basis for its decision, and give consideration to the factors found in WIS. STAT. § 48.426(3). *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶¶29-30, 255 Wis. 2d 170, 648 N.W.2d 402. WIS. STAT. § 48.426(3) states:

> In considering the best interests of the child under this section the court shall consider but not be limited to the following:
>
> (a) The likelihood of the child's adoption after termination.

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

¶8     L.Z. points out that, in spite of acknowledging the fact that C.M. would have no legal obligation to maintain a relationship between the children and their parents, the circuit court concluded that it would not be harmful to the children to sever the relationship because it believed "to a significant degree their relationship with their biological parents will continue as much as it has continued for the past several years[.]"  L.Z. asserts that, in so doing, the court "concluded that C.M. would keep what it knew was a legally unenforceable promise."

¶9     L.Z. argues that the circuit court did not adequately reflect on the impact that severing the relationships would have on the children if contact between them and L.Z. were to stop.  L.Z. insists that the court "ignored the real possibility that contact between [her] and her children would end upon termination of [her] parental rights."

¶10     We disagree, and conclude that the circuit court did not erroneously exercise its discretion when it chose to terminate L.Z.'s parental rights to Kayla and Kendall.

5

¶11 L.Z.'s argument can essentially be boiled down to an assertion that, because the circuit court chose to take C.M.'s commitment into account—that she would maintain a relationship between the children and their parents so long as it was appropriate, a commitment that was in no way legally enforceable—the court failed to adequately consider the harm that severing the parental relationship would have on Kayla and Kendall. This line of reasoning is improper for multiple reasons.

¶12 First, L.Z.'s assertion is contradicted by the transcript of the dispositional hearing. While it is true that the circuit court considered C.M.'s stated commitment to maintaining a relationship between L.Z. and the children, despite the fact that that commitment would not be legally enforceable in any way, this was not the full extent of the court's reasoning. The court took into account that the children had a "very substantial" relationship with L.Z. and that the children were "very bonded" with their parents. However, the court stated that, on balance, it believed that severing the legal relationship between L.Z. and the children would not be harmful to them. The court reasoned that the bond between L.Z. and the children, while strong, was "to some degree an insecure bond." It also pointed out that the children had spent a substantial length of time not knowing who they were going to live with and who would be taking care of them, which the court felt had been "hurtful" to the children.

¶13 Thus, while the circuit court understood that "it will be difficult and to some degree harmful" for the relationship between L.Z. and the children to be severed, stating that "there is always harm in ending a relationship between parents who really love their children and children who really love their parents," it believed overall that it was more harmful for the children to be "in limbo for as long as they have been."

¶14    The circuit court's consideration of C.M.'s stated commitment to maintain the relationship between L.Z. and the children was one other aspect that the court considered, noting that it usually discounted such promises but ultimately found a level of credibility in C.M.'s commitment based on her testimony.  The court stated that it felt it was "very likely … that [C.M.] will maintain a relationship between the children and their biological parents," which, in addition to the other considerations, weighed in favor of severing the relationship.

¶15    L.Z.'s argument thus fails to consider the entirety of the circuit court's reasoning.  As an aside, we also point out that there is also nothing in WIS. STAT. § 48.426(3) that prohibits a court, in considering the best interests of the child, from considering a commitment made by a foster parent stating that they will continue to maintain a relationship between the parent and the child.  In fact, the statute specifically states that the court, in making the decision whether to terminate the parent's rights, is *not limited to* the factors enumerated therein.  Sec. 48.426(3).  The failure to acknowledge this is another way in which L.Z.'s argument is flawed.

¶16    Thus, for the aforementioned reasons, we reject L.Z.'s argument and affirm the orders of the circuit court.

*By the Court.*—Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.