# COURT OF APPEALS
# DECISION
# DATED AND FILED

## January 3, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2023AP292**
**2023AP293**
STATE OF WISCONSIN

Cir. Ct. Nos. 2020TP158
2020TP159

**IN COURT OF APPEALS**
**DISTRICT I**

---

APPEAL NO. 2023AP292

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.K., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

       PETITIONER-RESPONDENT,

   V.

D.K.,

       RESPONDENT-APPELLANT.

---

APPEAL NO. 2023AP293

IN RE THE TERMINATION OF PARENTAL RIGHTS TO C.K., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

       PETITIONER-RESPONDENT,

**V.**

**D.K.,**

**RESPONDENT-APPELLANT.**

APPEALS from orders of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed.*

¶1    GEENEN, J.[1]   Daniel appeals the circuit court's order terminating his parental rights to Alice and Corey.  Daniel argues that his due process rights were violated when he knowingly, intelligently, and voluntarily entered a no contest plea[2] to one of the grounds alleged in the State's petitions to terminate his parental rights (specifically, continuing CHIPS)[3] in exchange for unsupervised visitation with Alice and Corey, a service that had been denied up to that point.  In particular, he claims that trading a plea for a previously denied service calls into question the reasonableness of the prior denials of the service and that the lack of an adversarial trial at the grounds stage creates an undue risk of erroneous findings

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.  In addition, to protect the confidentiality of these proceedings, we use pseudonyms to refer to the parties in this case.

[2] The parties draw distinctions between the use of the term "plea" and "admission" to characterize when a parent does not contest grounds during the grounds phase of proceedings to terminate parental rights, but these distinctions are without difference.  Though WIS. STAT. § 48.422(7) uses "admission," the overwhelming majority of case law uses the term "plea," *e.g.*, *State v. A.G.*, 2023 WI 61, 408 Wis. 2d 413, 992 N.W.2d 75, while some use both terms interchangeably, *e.g.*, *Waukesha Cnty. v. Steven H.*, 2000 WI 28, 233 Wis. 2d 344, 607 N.W.2d 607.  To remain consistent with the majority of the case law, we use "plea" in this opinion.

[3] CHIPS is the acronym used "to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code, chapter 48, Stats." *Marinette Cnty. v. Tammy C.*, 219 Wis. 2d 206, 208 n.1, 579 N.W.2d 635 (1998).

upon which a court will rely at the dispositional phase to sever the parental relationship.[4] Daniel also contends that after the circuit court accepted his plea, there was insufficient evidence presented at the prove-up hearing to support the factual basis of the plea, namely, that Daniel failed to meet the conditions set forth in the dispositional CHIPS order. Upon review, we affirm.

## BACKGROUND

¶2 Alice and Corey are the children of Daniel and Laura.[5] On February 4, 2019, Division of Milwaukee Child Protective Services (DMCPS) removed Alice, then two years old, and Corey, then nine months old, from their parents' care after due to concerns about physical abuse and lack of supervision after it received information that Corey had suffered multiple injuries to his face and head. Daniel and Laura offered various explanations for the injuries, including that Alice caused the injuries and that Corey caused the injuries to himself. After an investigation, the State charged Daniel with criminal child abuse offenses related to Corey's injuries, to which he eventually pleaded guilty.

¶3 After they were removed from their parents' home, the circuit court found that Alice and Corey were in need of protection or services and entered CHIPS dispositional orders for both children. The orders enumerated specific

---

[4] Termination of parental rights cases consist of two phases: a grounds phase to determine whether there are grounds to terminate a parent's rights, and a dispositional phase, which determines whether termination is in the child's best interest. *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶¶24-28, 255 Wis. 2d 170, 648 N.W.2d 402. If grounds are found by the jury, the parent is found "unfit," WIS. STAT. § 48.424(4), and the case moves to the dispositional phase. *Steven V. v. Kelley H.*, 2004 WI 47, ¶26, 271 Wis. 2d 1, 678 N.W.2d 856.

[5] Laura's parental rights were also terminated but are not before this court; therefore, this decision focuses on the facts and the proceedings as they relate to Daniel.

conditions Daniel was required to satisfy before the children could safely return home. Specifically, the orders required that he control and understand his alcohol addition, regularly visit with the children, and resolve his criminal case, among other conditions.

¶4  On July 27, 2020, the State filed TPR (termination of parental rights) petitions alleging that grounds existed to terminate Daniel's parental rights because he had failed to assume parental responsibility under WIS. STAT. § 48.415(6), and because Alice and Corey remained in need of protection or services under § 48.415(2) (continuing CHIPS). Daniel contested the petitions, and the case was scheduled for a jury trial.

¶5  While the TPR petitions were pending, Daniel made several requests to DMCPS for expanded, unsupervised visitation with the children; the requests were denied. In addition, in January 2021, Daniel and Laura asked the circuit court to find that DMCPS had not made reasonable efforts to provide court ordered services due to the lack of progress toward unsupervised visits; that request was also denied.

¶6  On April 5, 2021, the first day of the grounds trial, Daniel entered a no-contest plea to the continuing CHIPS ground. In exchange, the State dismissed the second ground, agreed to adjourn the dispositional hearing for several months, and implemented a schedule to progress toward unsupervised visits. The circuit court conducted a colloquy before accepting Daniel's plea to inquire about the voluntariness of the plea and ensure that Daniel understood his rights in the grounds and dispositional phases and the rights he was waiving by entering a plea.

¶7  After accepting Daniel's plea, the circuit court took judicial notice of the certified CHIPS case documents and received testimony from Emily

4

McDonald, the children's ongoing case manager, about the factual basis of the continuing CHIPS allegations. McDonald testified that DMCPS made reasonable efforts to provide Daniel all of the court ordered services and that, as of the date the TPR petitions were filed, Daniel failed to meet the conditions of return; specifically, Daniel still denied his role in causing Corey's injuries, and therefore had not met the condition "Supervise Your Child and Place Your Child's Needs Before Your Own," and had not resolved the criminal case against him. At the close of the hearing, the circuit court expressed concern about Daniel's unwillingness to take responsibility for causing Corey's injuries and found that the State proved the continuing CHIPS allegations by clear, convincing, and satisfactory evidence. Accordingly, the circuit court found Daniel unfit under WIS. STAT. § 48.424(4).

¶8    The cases proceeded to the dispositional phase, though there were several adjournments. Daniel admits that the adjournments allowed him time to progress on unsupervised visitation and placed him in a much better position at the dispositional hearing. After several days of testimony, the circuit court concluded that granting the TPR petitions was in the children's best interest, and entered an order terminating Daniel's parental rights. Daniel filed a timely notice of appeal. Given the issues Daniel intended to appeal, this court remanded the cases for post-disposition fact-finding.

¶9    On remand, Daniel argued that any continuing CHIPS grounds plea entered by a parent, in exchange for the parent receiving a previously denied service, is fundamentally unfair.[6] The service Daniel placed at issue was

_____

[6] Daniel raised other arguments on remand that he does not raise in this appeal. We therefore do not address them.

unsupervised visitation. During the post-disposition hearing, case supervisor Jessica Mayne testified that DMCPS progresses visitation based on its evaluation of ongoing safety standards and other factors including behavioral change, visitation attendance, therapist recommendations, pending criminal cases, and the parents' understanding of why DMCPS became involved, among other things. In Daniel's case, she noted that DMCPS was limited by his refusal to discuss anything related to the children's removal, his alcohol abuse, and the abuse allegations while his criminal case was pending, which prevented DMCPS from evaluating progress on the conditions of return and, therefore, whether to expand visitation. She additionally noted that, due to Daniel's guilty plea in the criminal case, expanded visitation was impossible until the criminal court order prohibiting unsupervised contact with Corey was modified, which occurred just before the April trial.

¶10 The post-disposition court affirmed the circuit court. It held that Daniel entered his plea knowingly, intelligently, and voluntarily; that there were no defects in the colloquy; and that the State proved the continuing CHIPS ground by clear, convincing, and satisfactory evidence. These appellate proceedings followed.

## DISCUSSION

### I. Daniel's Due Process rights were not violated.

¶11 On appeal, Daniel stipulates that his plea was entered knowingly, intelligently, and voluntarily, and he does not allege that the State and DMCPS intentionally used visitation as a tool to leverage the no contest plea. Daniel admits in his brief that:

6

> [He] was not threatened or forced to take the plea. His own lawyer, a competent and diligent advocate, came up with the idea for the deal in the first place … after eight months of [DMCPS] hesitating, that unsupervised visitation with [Alice] and [Corey] was not safe, [Daniel] would stipulate to continuing CHIPS, the district attorney and guardian ad litem would withdraw their longstanding objections …, and DMCPS would finally allow [Daniel] unsupervised visits with [Alice] and [Corey]. When the date of the dispositional hearing arrived, [Daniel] was in an undeniably stronger position … than he would have been in had [the dispositional trial not been adjourned] thirteen months earlier.

Nevertheless, Daniel argues that any time a parent pleads to continuing CHIPS grounds where the State offers a new or previously denied service, "that the offer is being made at all [suggests] that the previous denial was unreasonable[.]" Because the State is required to prove that reasonable efforts were made to provide court ordered services in order to prove grounds, and because a plea on continuing CHIPS concedes that reasonable efforts were made (subject to a non-adversarial prove up), Daniel contends that the process creates an unreasonable risk of error and thus violates his right to procedural due process. We disagree.

¶12    Parents have a fundamental liberty interest in their relationship to their children that is protected by the Fourteenth Amendment, including the ability to raise their children as they see fit and to maintain the care and custody of the children. *Steven V. v. Kelley H.*, 2004 WI 47, ¶22, 271 Wis. 2d 1, 678 N.W.2d 856. Our supreme court explained that, given these interests, the process due in a termination of parental rights case includes "the opportunity to be heard 'at a meaningful time and in a meaningful manner[,]'" as well as the right to "present a complete defense." *Brown Cnty v. Shannon R.*, 2005 WI 160, ¶¶64-65, 286 Wis. 2d 278, 706 N.W.2d 269 (citations omitted).

7

¶13 Our statutes outline this process. A parent who contests the grounds alleged in a TPR petition has a statutory right to a fact-finding hearing. WIS. STAT. § 48.31(2); *Steven V.*, 271 Wis. 2d 1, ¶3. If a parent chooses, they may, in effect, plead no contest by entering an admission to the alleged facts underlying grounds, but only after the court ensures that the plea is voluntary, that the parent understands the rights they are waiving by their plea, and verifying that no promises or threats were made in exchange for the plea. WIS. STAT. § 48.422(7)(a)-(b). In addition, the State must still present evidence to prove the ground by clear and convincing evidence. *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶3, 246 Wis. 2d 1, 629 N.W.2d 768. Whether a parent's right to due process was violated "presents a question of law that we review de novo." *State v. McGuire*, 2010 WI 91, ¶26, 328 Wis. 2d 289, 786 N.W.2d 227.

¶14 We conclude that Daniel was denied none of the procedural safeguards applicable to TPR proceedings that ensure due process. Daniel received notice of all hearings and was provided an attorney. He had the right to force the State to prove its case by clear and convincing evidence in a contested jury trial. He had the right to testify or remain silent, to cross-examination, to introduce evidence, and to subpoena witnesses. Additionally, even after entering an admission on grounds, the State was still required to prove grounds by clear and convincing evidence, albeit in a non-adversarial setting.

¶15 Daniel's argument that the offer and acceptance of a grounds plea creates an unacceptable risk of an erroneous outcome ignores the fact that a parent cannot be required to plead to grounds. In the absence of a plea, the parent is entitled to a fully contested grounds trial with all of its procedural safeguards and rights. That is, if a parent doubts that services were reasonably provided, believes there is insufficient evidence to prove grounds, or wants to shape the record for the

dispositional hearing, a contested grounds trial, with all of its attendant rights, is the mechanism to challenge the State's evidence, including whether services were reasonably provided.

¶16 Daniel was not required to enter a plea. With the advice of counsel, he made a strategic decision that he would be in a better position in the proceeding if he entered a plea in exchange for a delayed dispositional hearing and unsupervised visitation. *See **Rahhal v. State***, 52 Wis. 2d 144, 151-52, 187 N.W.2d 800 (1971) ("The fact that a defendant must make a choice between two reasonable alternatives and take the consequences is not coercive of the choice finally made. The distinction between a motivation which induces and a force which compels the human mind to act must always be kept in focus.") The record reflects that Daniel was advised of the potential outcomes at disposition and knew that, by accepting the plea, he waived the right to contest the State's evidence on grounds.

¶17 Moreover, the trial court reasonably found that the evidence presented at the prove-up hearing established that Daniel received reasonable visitation as required by the CHIPS dispositional order. Although the order required DMCPS to make reasonable efforts to "[h]ave visits unsupervised unless safety concerns require supervision[,]" it also specified under "Other Special Conditions on Visitation" that "[v]isits shall be supervised by an outside visitation agency. Visitation shall not move from supervised without consultation with the [guardian ad litem]." The trial court heard testimony about why Daniel failed to make progress towards unsupervised visits, namely, that he refused to discuss his alcohol abuse and his abuse of Corey during the pendency of his criminal case. Even after Daniel resolved the criminal case, the criminal court's order prohibited unsupervised visits, further delaying progress.

¶18     In sum, we are satisfied that the procedural safeguards applicable to TPR proceedings satisfy due process, and accordingly, Daniel's due process rights were not violated.

**II.     There was sufficient evidence that Daniel failed to meet the CHIPS conditions.**

¶19     Daniel argues that there was insufficient evidence that he failed to meet the conditions set forth in the CHIPS dispositional order.  Specifically, Daniel argues that the circuit court's primary reason for finding he did not meet the CHIPS conditions—that he refused to acknowledge causing Corey's injuries—was not specifically listed in the dispositional order as a condition for the return of the children to Daniel's care.  We reject Daniel's argument.

¶20     We review the sufficiency of the evidence under the well-established standard of review set forth in WIS. STAT. § 805.17(2):  "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [circuit] court to judge the credibility of witnesses."  Great deference is accorded to the circuit court's decision and will only be overturned if the circuit court erroneously exercised its discretion.  ***Rock Cnty. DSS v. K.K.***, 162 Wis. 2d 431, 441, 469 N.W.2d 881 (Ct. App. 1991).  We examine the record "to determine if the circuit court logically interpreted the facts, applied the proper legal standard, and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach."  ***Brandon Apparel Gp. v. Pearson Props., Ltd.***, 247 Wis. 2d 521, 530, 634 N.W.2d 544 (Ct. App. 2001).

¶21     The circuit court heard testimony from McDonald, the children's ongoing case manager, who testified that DMCPS made reasonable efforts to provide Daniel all of the court ordered services, including a psychological

evaluation, a parenting assessment, parenting classes, an alcohol and other drug abuse evaluation and treatment ("AODA"), anger management, and visitation. McDonald further testified that Daniel failed to meet the conditions of return as of the filing of the TPR petition in July 2020. Specifically, Daniel denied that he caused Corey's injuries, and therefore had not met the condition "Supervise Your Child and Place Your Child's Needs Before Your Own." McDonald also noted that as of July 2020, Daniel had failed to meet the condition "Resolve Your Criminal Case." When Daniel finally resolved his criminal case in November 2020 by pleading guilty to three counts of battery against Corey, he continued to deny that he was responsible for Corey's injuries.

¶22 The circuit court found that the State proved the continuing CHIPS ground by clear and convincing evidence. In its decision, the circuit court explained:

> Without that acknowledgement [of responsibility], which is the most fundamental behavioral change that was needed in these cases, the children could not be returned safely because if you haven't come to terms with what you did, you might do it again. If you haven't come to terms with the behaviors that brought the whole thing into the system in the first place, again, you might repeat those behaviors. I do find that CHIPS ground—excuse me, that termination ground is met by clear, convincing, and satisfactory evidence.

¶23 Our review of the record satisfies us that the circuit court "logically interpreted the facts, applied the proper legal standard, and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach." *Brandon Apparel Gp.*, 247 Wis. 2d at 530.

11

¶24    Accordingly, there was sufficient evidence that Daniel failed to meet the CHIPS conditions.    *By the Court.*—Orders affirmed.    This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)4.